**CLEVELAND**

**v.**

**LESTER.**

2007-Ohio-5375.]

Cleveland Municipal Court.

No. 2006 CRB 40922.

Decided May 16, 2007.

Victor Perez, Chief City Prosecuting Attorney, for plaintiff.

David B. Henderson, for defendant.

Emanuella Groves, Judge.

{¶ 1} On December 5, 2006, defendant was charged with violation of R.C. 2921.15, making false allegation of peace officer misconduct. The statute prohibits a person from knowingly filing a false complaint of misconduct against a peace officer.

40

{¶ 2} The basis of the charge is that on April 3, 2006, defendant allegedly went to the Cleveland Police Department's Office of Professional Standards ("OPS") and completed its citizen complaint form. Defendant complained that an officer was stalking him. He concluded this because the same officer had stopped and ticketed him twice within the same month. Upon review, OPS found that both tickets were validly issued and that the defendant's description of his dealings with the officer was unfounded. Subsequently, defendant was charged with a violation of R.C. 2921.15. Defendant has now moved to dismiss, arguing that he did not file a "complaint" within the meaning of Crim.R. 3 and R.C. 2921.15, a statute that has elsewhere been held unconstitutional.[1]

{¶ 3} Before addressing the legal challenges raised by defendant, it is important to review the history of OPS. In response to an increasing number of citizen complaints involving allegations of police misconduct, the Cleveland City Council passed an emergency ordinance, Ordinance No. 1397–84, on September 5, 1984, to place a proposed city charter amendment on the ballot at the November 6, 1984 election.[2] The purpose of the charter amendment was to establish a police review board and to create an OPS within the office of the Director of Safety.[3] On November 6, 1984, Cleveland voters adopted the charter amendment.[4] Both the Cleveland Police Patrolmen's Association and Fraternal Order of Police challenged the amendment of the charter. The police associations attempted to invalidate the election on several grounds. The legal challenge to the amendment lasted almost four years and was finally resolved by the Supreme Court of Ohio, which found the charter amendment valid on February 10, 1988.[5] Between 2003 and 2006, OPS has handled an average of 500 citizen complaint forms annually.

{¶ 4} One of the challenges defendant raises is that the form signed with OPS is not a "complaint" within the meaning of R.C. 2921.15. The Revised Code does not provide a definition of "complaint." In order to give the word context and meaning, a review of other laws that prohibit the communication of false information, and the manner in which that information is communicated, may be helpful.

{¶ 5} For instance, R.C. 2921.11, setting forth the offense of perjury, states, "No person, in any official proceeding, shall knowingly make *a false statement*

---

1. *State v. English,* 120 Ohio Misc.2d 16, 2002–Ohio–5440, 776 N.E.2d 1179.

2. *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 519 N.E.2d 347

3. Id.

4. Id.

5. Id.

*under oath or affirmation."* (Emphasis added.) R.C. 2921.13, falsification, states, "No person shall knowingly make a *false statement,* or knowingly *swear or affirm the truth of a false statement* previously made." (Emphasis added.) In both these sections, the manner of communicating the false information is a *statement.* To rise to the level of perjury, the false statement must be under oath. For falsification, a mere false statement may be sufficient. Additionally, R.C. 2921.14, which sets forth the offense of false report of child abuse or neglect, states, "No person shall knowingly make or cause another person to make a *false report."* (Emphasis added.) Under that section, the manner of communicating the false information is a report. Pursuant to R.C. 2921.15, the manner prohibited for communicating false police misconduct is by *complaint.*

{¶ 6} None of the methods stated for communicating false information, i.e., statement, report, or complaint, are defined in the Revised Code. However, "complaint" has been defined in Crim.R. 3. In short, "complaint" is defined as a written statement, under oath, of essential facts constituting the offense charged. According to R.C. 1.42, "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Two other courts have adopted the Crim.R. 3 standard for defining "complaint" under R.C. 2921.15.[6]

{¶ 7} In adopting the Crim.R. 3 definition, the courts relied upon R.C. 1.11, which provides that all criminal laws are to be strictly construed.[7] Additionally, R.C. 2901.04(A) states, "Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."[8] The title of R.C. 2921.15 is "Making False Allegations Against Peace Officer Misconduct," but the statute uses the word "complaint" instead of "allegation" in describing the offense.[9] It is well established that section headings do not constitute any part of the law.[10] Of all the methods by which one may communicate false assertions of police misconduct, including "allegation," the Ohio legislature singled out "complaint." Some may argue that the difference between "allegations," "statements," "reports," and "complaints" is insignificant as a matter of fact. Others may even suggest that to attempt to distinguish between them it is akin to splitting hairs. However, this would ignore the rules of statutory construction. "Statement" has been defined as an assertion

---

6. *State v. English,* 120 Ohio Misc.2d 16, 2002-Ohio-5440, 776 N.E.2d 1179.

7. Id.

8. *Akron v. Davenport,* Summit App. No. 21552, 2004-Ohio-435, 2004 WL 199830, at ¶ 11.

9. Id.

10. Id., citing R.C. 1.01.

or declaration of matters of fact.[11] The evidentiary standard is not as high as a complaint. It is clear that application of Crim.R. 3 definition imposes a higher evidentiary standard, i.e., being made under oath. Therefore, the distinction is necessary. Otherwise, the use of different words to describe different methods of communicating false information would be meaningless.

{¶ 8} Now that "complaint" has been defined, the question is whether the OPS complaint form satisfies the definition. The OPS form is identified as a citizen "complaint" form. No oath or affirmation is utilized. However, merely identifying the form as such does not necessarily mean it is what it is called. If anything, the form is akin to a statement. Therefore, the form does not satisfy the definition of Crim.R. 3. The defendant's argument that the defendant did not file a complaint pursuant to R.C. 2921.15 is well taken.

{¶ 9} The defendant also challenges the constitutionality of R.C. 2921.15. However, the Supreme Court of Ohio has held, "Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary."[12] Courts should not reach constitutional issues when a case is capable of resolution on other grounds.[13] Being that this case can be resolved without addressing the constitutionality of R.C. 2921.15, this court shall not address the matter.

{¶ 10} For good cause shown, defendant's motion is hereby granted. This case is hereby dismissed.

So ordered.

---

11. *State v. Coyne* (1980), 69 Ohio App.2d 63, 23 O.O.3d 68, 430 N.E.2d 473.

12. *Mayer v. Bristow* (2000), 91 Ohio St.3d 3, 9, 740 N.E.2d 656; *Ohioans for Fair Representation, Inc. v. Taft* (1993), 67 Ohio St.3d 180, 183, 616 N.E.2d 905; *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 210, 4 O.O.3d 390, 364 N.E.2d 852.

13. *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396; *In re Boggs* (1990), 50 Ohio St.3d 217, 221, 553 N.E.2d 676; *State v. Kawaguchi* (2000), 137 Ohio App.3d 597, 610, 739 N.E.2d 392.