[Cite as *State v. Hanson*, 2019-Ohio-3688.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28057 |
| | : | |
| v. | : | Trial Court Case No. 2017-CRB-1925 |
| | : | |
| JOHN HANSON, III | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of September, 2019.

. . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. No. 0050559, 10 N. First Street, Miamisburg, Ohio 45342
    Attorney for Plaintiff-Appellee

HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

{¶ 1} Defendant-appellant, John Hanson, III, appeals from his conviction in the Miamisburg Municipal Court after he pled no contest to two counts of making a false allegation of peace officer misconduct in violation of R.C. 2921.15(B). In support of his appeal, Hanson contends that there was insufficient evidence to support his conviction and that R.C. 2921.15 is unconstitutional. For the reasons outlined below, we conclude that the evidence was sufficient to establish that appellant filed a false "complaint" against a peace officer by making false verbal accusations and a written witness statement to a police supervisor alleging the arresting officers raped him. We further conclude the evidence was sufficient to establish that Hanson's accusation was made "knowingly." Finally, Hanson waived his challenge to the constitutionality of R.C. 2921.15 by failing to raise the issue in the trial court. Consequently, we affirm the convictions.

### Facts and Course of Proceedings

{¶ 2} On October 27, 2017, Officers Nick Bell and Brandon Mundy of the Miamisburg Police Department arrested Hanson on misdemeanor charges of failure to comply with the order or signal of a police officer and disorderly conduct. Following Hanson's arrest, the officers transported Hanson to the Montgomery County Jail. Hanson was released from jail the next day and was thereafter charged in the Miamisburg Municipal Court with the above-named offenses. The charges were filed under Case Nos. 2017-CRB-1888(A) and (B).

{¶ 3} Upon being released from jail, Hanson called the Miamisburg Police Department and reported that Officers Bell and Mundy had beat him and shoved something up his rectum during the course of his arrest. Sergeant Josiah Keefer responded to Hanson's call and briefly spoke to Hanson about his accusations against

the officers. During the call, Keefer asked Hanson to meet with him at the police station to discuss the matter further and to get a written statement. Hanson agreed and thereafter went to the police station to speak with Sergeant Keefer.

{¶ 4} When Hanson arrived at the police station, Keefer obtained Hanson's identification information and questioned him about the alleged assault by Officers Bell and Mundy. Keefer audio-recorded his conversation with Hanson and had Hanson complete a written "Witness Statement" form. On the form, Hanson wrote that the arresting officers had "tackled [him] from behind" and assaulted him by "hitting" him, "smashing [his] face into the ground [,] sticking something in [his] rectum causing [him] to bleed for the last two days." State's Exhibit No. 20.

{¶ 5} During their meeting, Sergeant Keefer also had Hanson sign a document explaining the offense of making a false allegation of peace officer misconduct. Keefer explained that he wanted Hanson to sign the document in order to confirm that Hanson "understood that it was a crime to file false reports on police officers." State's Exhibit Nos. 22 and 29. During the recorded conversation, Hanson told Keefer that he did not know whether the officer's actions were malicious but nevertheless maintained that one of the officers shoved something up his rectum. Toward the end of their conversation, Keefer told Hanson that he was going to "open an investigation, do a report, get his medical records and take photos." State's Exhibit Nos. 22 and 29. After Keefer took photographs of Hanson, Hanson left the police station, and Keefer forwarded his report to Sergeant Jeffrey Muncy for further investigation.

{¶ 6} In investigating the matter further, Sergeant Muncy reviewed the cruiser camera video footage of Hanson's arrest, Hanson's jail records, the video of Hanson's jail

booking, a Dayton medic call log, and medical records obtained from NaphCare. Based on his review, Muncy found that Hanson's accusations against Officers Bell and Mundy were unfounded. Upon learning that Hanson's allegations were false, Sergeant Muncy presented the matter to the prosecutor, who approved charging Hanson with two counts of making a false allegation of peace officer misconduct in violation of R.C. 2921.15(B). In the complaint charging Hanson, it was specifically alleged that Hanson violated R.C. 2921.15(B) by "report[ing] to Sgt. Keefer that Officer Nick Bell [and Officer Brandon Mundy] had physically and/or sexually assaulted him on the night of his arrest on 10/27/17, knowing this did not occur." Complaint (Nov. 1, 2017), Miamisburg M.C. No. 2017-CRB-1925(A)/(B), Docket No. 2.

{¶ 7} In the course of his investigation, Muncy also contacted Hanson by telephone on November 1, 2017. During this call, which was audio-recorded, Muncy advised Hanson that he was calling to follow up on Hanson's complaints. In response, Hanson told Muncy that he had already given his written statement to Sergeant Keefer and that he did not know what else to say. Hanson also told Muncy that he "would just like to forget about the whole thing" and that "he did not know if [the officers] purposely did it to him." State's Exhibit Nos. 22 and 28. Hanson, however, still maintained that the officers beat him and shoved something up his rectum.

{¶ 8} Following this discussion, Muncy told Hanson that in order to close the case, Hanson needed to either sign a statement of non-prosecution or meet with him at the police station to further discuss the allegations. Although Hanson agreed to meet with Muncy, Hanson never appeared at the police station. After Hanson failed to appear, Muncy called Hanson again. During this second call, Hanson advised Muncy that he did

not appear because he had learned from the Miamisburg Municipal Court website that there was a warrant for his arrest. To this, Muncy responded that "the warrant was for making false allegations against a police officer, for this incident." State's Exhibit No. 22. There is no dispute that Hanson never met with Muncy, but instead turned himself in to the Miamisburg Municipal Court the next day, on November 2, 2017.

{¶ 9} After turning himself in, Hanson appeared before the trial court and pled not guilty to the two charges of making a false allegation of peace officer misconduct. The matter was thereafter set for a jury trial. However, on the day of trial, Hanson decided to accept a negotiated plea agreement with the State. As part of the plea agreement, Hanson agreed to plead no contest to both of the false allegation charges in exchange for the State dismissing the charges for failure to comply and disorderly conduct in Case Nos. 2017-CRB-1888(A) and (B).

{¶ 10} Following the trial court's acceptance of Hanson's no contest plea, the State submitted 31 exhibits in support of the charges alleging that Hanson had made false allegations of peace officer misconduct. The State's exhibits included the video footage of Hanson's October 27, 2017 arrest and jail booking, photographs of Hanson's alleged injuries, Hanson's handwritten "Witness Statement," the recorded telephone conversations that Hanson had with Sergeants Keefer and Muncy, the police reports generated by Sergeants Keefer and Muncy, the two complaints filed against Hanson in this case, and Miami Valley Hospital records indicating that there was no "acute trauma" to Hanson's rectum. After the trial court noted on the record that it had "extensively" reviewed the 31 exhibits presented by the State, the trial court found there was "more than sufficient evidence to find [Hanson] guilty" of the two charges. Trans. (June 22,

2018), p. 15 and 18.

{¶ 11} After finding Hanson guilty, the trial court proceeded to sentencing.   In sentencing Hanson, the trial court imposed 180 days in jail for each offense, to be served concurrently, with 175 days suspended and two days of jail-time credit.   In lieu of serving three days in jail, the trial court ordered Hanson to attend and complete a 72-hour alcohol intervention program at the Ohio Intervention Center ("OIC").   The trial court also ordered Hanson to complete a drug and alcohol assessment with Dr. Mary Melton at the OIC and to complete any recommended counseling or treatment.   In addition, the trial court imposed two years of reporting probation and ordered Hanson to pay a $230 fine and court costs.

{¶ 12} Hanson now appeals from his conviction, raising three assignments of error for review.


**First Assignment of Error**

{¶ 13} Under his first assignment of error, Hanson contends that there was insufficient evidence for the trial court to find him guilty of violating R.C. 2921.15(B). Specifically, Hanson contends that the evidence did not establish that he filed a "complaint" against Officers Bell and Mundy as required for a violation of R.C. 2921.15(B).

{¶ 14} "On a plea of no contest to a misdemeanor offense, R.C. 2937.07 provides that a court may find the defendant guilty or not guilty based on 'the explanation of the circumstances of the offense.' "   (Footnote omitted.)   *State v. Wieckowski*, 2d Dist. Clark No. 2010-CA-111, 2011-Ohio-5567, ¶ 4.   "Although R.C. 2937.07 does not define the phrase 'explanation of circumstances,' it requires evidence sufficient to demonstrate the

accused's criminal liability for the offense charged." (Citation omitted.) *State v. Osterfeld*, 2d Dist. Montgomery No. 20677, 2005-Ohio-3180, ¶ 6. Therefore, the explanation of circumstances "necessarily involves, at a minimum, some positive recitation of facts which, if the court finds them to be true, would permit the court to enter a guilty verdict and a judgment of conviction on the charge to which the accused has offered a plea of no contest." *Id.* "Documentary evidence may suffice as an explanation of the circumstances supporting the charge, provided the record demonstrates that the trial court actually considered that evidence in determining Defendant's guilt or innocence." (Citations omitted.) *State v. Mazzone*, 2d Dist. Montgomery No. 18780, 2001 WL 1141822, *2 (Sept. 28, 2001).

{¶ 15} Appellate courts "review the explanation of circumstances to determine if there is sufficient evidence in the record to establish all of the elements of the offense." *State v. O'Brien*, 5th Dist. Licking No. 17-CA-14, 2017-Ohio-7219, ¶ 35, citing *Cuyahoga Falls v. Bowers*, 9 Ohio St.3d 148, 150, 459 N.E.2d 532 (1984). In doing so, appellate courts utilize a de novo standard of review. *Id.* A "[d]e novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5, quoting *Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.).

{¶ 16} In this case, after Hanson entered a no contest plea, the trial court found him guilty of making a false allegation of peace officer misconduct in violation of R.C. 2921.15(B). Pursuant to that statute: "No person shall knowingly file a complaint against a peace officer that alleges that the peace officer engaged in misconduct in the

performance of the officer's duties if the person knows that the allegation is false." R.C. 2921.15(B). Although the record indicates that the trial court found sufficient evidence of Hanson's guilt after considering the 31 exhibits offered by the State, Hanson claims that the exhibits fail to establish that he filed a "complaint" within the meaning of R.C. 2921.15(B).

{¶ 17} While the title of R.C. 2921.15 includes the word "allegation," i.e., "Making False *Allegation* of Peace Officer Misconduct," it is well established that "Title, Chapter, and section headings * * * do not constitute any part of the law as contained in the 'Revised Code.' " R.C. 1.01. Accordingly, in adhering to the plain terms of R.C. 2921.15(B), a violation of that statute only occurs when an individual knowingly files a *complaint*.

{¶ 18} The term "complaint," as it is used in R.C. 2921.15(B), is not defined by the Revised Code. However, when construing the language of a statute, R.C. 1.42 provides: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42 further provides: "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." We are also mindful that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A).

{¶ 19} The discrete issue raised in the first assignment of error is whether the phrase "file a complaint," as it is used in R.C. 2921.15(B), requires an offender to file in court a false criminal "complaint," as that term is defined in Crim.R. 3, before coming within the purview of the statute making it a misdemeanor to "knowingly file a complaint

against a peace officer that alleges that the peace officer engaged in misconduct in the performance of the officer's duties if the person knows that the allegation is false." R.C. 2921.15(B). In our opinion, for multiple reasons that follow, the terminology "file a complaint" was not intended to be limited only to the filing of a criminal complaint in a court.

{¶ 20} First, there is no statutory authority for a private citizen to file a criminal "complaint" in court. At best, "[a] private citizen having knowledge of the facts who seeks to cause an arrest or prosecution under this section may file an *affidavit* charging the offense committed with a *reviewing official* for the purpose of review to determine if a *complaint should be filed by the prosecuting attorney* or attorney charged by law with the prosecution of offenses in the court or before the magistrate." (Emphasis added.) R.C. 2935.09(D). Specifically related to Hanson's case, he submitted a written statement to the police department where he falsely accused two police officers of "tackling" him and "sticking something in [his] rectum." If true, his accusation would constitute the felonies of rape or felonious assault or both. Even if Hanson had submitted his allegations to a court under R.C. 2935.09(D), his submission would be by "affidavit," and the question of whether or not a criminal "complaint" would ensue would be determined by the "reviewing official," "a judge, * * * the prosecuting attorney, * * * or a magistrate" (the defined "reviewing official[s]" under R.C. 2935.09(A)). Because a private citizen, victim or not, is not authorized to file a Crim.R. 3 "complaint," a violation of R.C. 2921.15(B) would never occur if "file a complaint" only means that the individual must file a Crim.R. 3 complaint in court. The Ohio Supreme Court has stated that " '[t]he plain language of [R.C. 2935.09(D)] does not permit the filing of a complaint by a private citizen,' although it does recognize

the filing of an affidavit by the private citizen." *State ex rel. Dominguez v. State*, 129 Ohio St.3d 203, 2011-Ohio-3091, 951 N.E.2d 77, ¶ 2, quoting *State ex rel. Muff v. Wollenberg*, 5th Dist. Perry No. 08-CA-11, 2008-Ohio-4699, ¶ 12. If Hanson is not permitted to "file a [Crim.R. 3] complaint" in court, then "file a complaint" in R.C. 2921.15(B) cannot mean that the false accuser must file a Crim.R. 3 complaint in court.

{¶ 21} Technically, even a police officer does not file a Crim.R. 3 "complaint." In order to commence a prosecution, a peace officer may file an affidavit charging an offense directly with the clerk of a court. *See* R.C. 2935.09(C) (providing that "[a] peace officer who seeks to cause an arrest or prosecution under this section may file with a reviewing official *or the clerk of a court* of record an *affidavit* charging the offense committed.") (Emphasis added).[1] We recognize the common practice that some clerks accept affidavits from police officers charging offenses that are captioned as a "criminal complaint." And many jurisdictions have private citizens endorse what is captioned a "criminal complaint" at the clerk's office to initiate misdemeanor prosecutions. The bulk of those private-citizen-initiated cases are for domestic violence, violation of a protection order, menacing by stalking, or trespass where, statutorily, a written statement from a

---

[1] Although a peace officer is permitted to initiate a prosecution by filing a charging affidavit with a clerk of court, conversely a private citizen charging affidavit, if filed with the clerk, is required to be submitted to a "reviewing official": a judge, prosecuting attorney or magistrate for further proceedings. R.C. 2935.09(D). Therefore, a clerk is not authorized to initiate criminal proceedings from a private citizen affidavit. A clerk is authorized to issue a warrant for a felony, or a warrant or summons for a misdemeanor for a charging affidavit over which it has authority to process. R.C. 2935.10. But since a private citizen charging affidavit must be acted upon only by a reviewing official, whether a warrant would issue, or whether the matter is referred to the prosecutor for the filing of a complaint or for further investigation, can only be determined by a judge, prosecuting attorney, or magistrate.

victim "constitutes reasonable ground" to believe the person named committed the offense. R.C. 2935.03 (B)(2)(a) and (B)(3)(a)(i).[2]  One might argue that a private citizen charging affidavit that contains the facts constituting the offense and the numerical designation of the statute or ordinance violated ipso facto constitutes a Crim.R. 3 "complaint." Even then, unless a private citizen is legally trained, he or she could not file such a document alone. The private citizen would not independently recognize the legal requirements of such a document. And even if in practice many, or most, misdemeanor prosecutions begin with the submission of a charging affidavit by a police officer directly to the clerk's office, captioned as a "criminal complaint," there is no statute that permits a private citizen to file a criminal complaint.

**{¶ 22}** When there is an arrest without a warrant, meaning no court action has been initiated (no filed "complaint"), an arresting official "shall, without unnecessary delay, take the person arrested before a court or magistrate having jurisdiction of the offense, and shall file or cause to be filed an *affidavit* describing the offense for which the person was arrested. Such affidavit shall be filed either with the court or magistrate, or with the prosecuting attorney * * * and if filed with such attorney he [the prosecutor] shall forthwith file with such court or magistrate a complaint, based on such affidavit." R.C. 2935.05. Consequently, even a peace officer who has made an arrest is not the person who would "file a complaint" as contemplated by Crim.R. 3. Despite routine practices to the contrary, where officers or detectives initiate criminal processes by endorsing what is titled a

---

[2] It also may be that the practice of having a complaining witness endorse a "criminal complaint" at the clerk's office is a protective mechanism to screen out those who report potential criminal activity to the police but who are unwilling to take the steps necessary to proceed with prosecution.

"criminal complaint," their initiating document more precisely should be called "an *affidavit* describing the offense," which, if it contains the elements of Crim.R. 3, would by rule constitute a criminal complaint to start the criminal process.[3]

{¶ 23} Invariably, in felony prosecutions where there is not an immediate arrest, criminal process is initiated with a grand jury indictment and there is no criminal "complaint" at all. That would apply to Hanson's felony "complaint." In all likelihood, upon investigation, if his false allegations had been supported by evidence, the matter would have been presented to a grand jury to see if an indictment could be obtained. Neither the victim, Hanson, nor anyone else would ever file a criminal "complaint" as that term is used in Crim.R. 3. The false nature of his accusation can be just as harmful, whether or not a criminal "complaint" is filed. In any event, whether or not a Crim.R. 3 "complaint" is filed by the falsifying offender is not up to the offender and cannot be done by the offender. Therefore, limiting the terminology "file a complaint" to a Crim.R. 3 criminal complaint not only makes little sense, it also could not be what the legislature intended by that wording of the statute.

{¶ 24} Second, the vast majority of complaints against police officers are for excessive use of force or denial of civil or constitutional rights. But not all accusations of police misconduct are criminal and, even if substantiated, most are resolved by internal disciplinary action, and they never result in the filing of a criminal "complaint." It is likely the majority of accusations, "complaints," are made to internal affairs divisions of large

---

[3] Similarly, in a citizen's arrest under R.C. 2935.04, the private person shall forthwith take the person before a judge, clerk, magistrate, or officer. And, if the officer does not, the private person shall file "an affidavit stating the offense." R.C. 2935.06. A "complaint" per se is not authorized.

departments, or to supervisors in smaller ones. But that is not the only way a knowingly false "complaint" can be filed. The United States Department of Justice investigates both individual and departmental police misconduct. Its website "explains how you can *file a complaint* with DOJ if you believe that your rights have been violated."[4] (Emphasis added). Moreover criminal accusations, "complaints," are investigated by the FBI, the Civil Rights Division handles constitutional or civil rights violations, or "[y]ou may also *file a complaint* online at www.ada.gov/filing_complaint.htm" (emphasis added) under the Americans with Disabilities Act. Under the very narrow definition that "file a complaint" means only a Crim.R. 3 "complaint," demonstrably false complaints filed with any of these agencies would escape prosecution under R.C. 2921.15(B). In our opinion, the legislature did not intend to exclude false federal or false non-criminal misconduct accusations from R.C. 2921.15(B) prosecution.

{¶ 25} Third, practically speaking, when an accusation is made against a police officer, reasonable authorities conduct a thorough investigation. When that investigation reveals the accusation is demonstrably false, there would never be a criminal "complaint" against the officer, as defined by Crim.R. 3, because the accusation was shown to be false. No one would allow criminal prosecution, initiated by the filing of a criminal "complaint," when the accusation is provably false. Therefore, limiting prosecution for a false "complaint" against a police officer only to where a Crim.R. 3 criminal "complaint" has been filed would rarely occur and would fail to address the damage caused by a false complaint especially when the accusation can be proven false beyond a reasonable

---

[4]    https://www.justice.gov/crt/addressing-police-misconduct-laws-enforced-department-justice, accessed August 3, 2019.

doubt, which is what eventually would be required for a conviction under R.C. 2921.15(B).

{¶ 26} We recognize the decisions of several courts that have interpreted the terminology "file a complaint" in R.C. 2921.15(B) to mean file a criminal complaint as that term is defined in Crim.R. 3. *See, e.g., State v. McCaleb*, 12th Dist. Madison No. CA2009-01-002, 2009-Ohio-6554, ¶ 17-23 (holding that an unsigned, faxed State Patrol misconduct accusation form, disputing a trooper's trial testimony, was not a "complaint"); *Akron v. Davenport*, 9th Dist. Summit No. 21552, 2004-Ohio-435, ¶ 15-18 (giving a tape recorded statement to a supervisor accusing an arresting officer of punching the offender three times, with no further action, did not constitute filing a complaint,); *Cleveland v. Lester*, 143 Ohio Misc.2d 39, 2007-Ohio-5375, 876 N.E.2d 1318, ¶ 7 (completion of a citizen complaint form at the Cleveland Police Office of Professional Standards did not constitute filing a complaint, adopting the Crim.R. 3 definition); *State v. English*, 120 Ohio Misc.2d 16, 2002-Ohio-5440, 776 N.E.2d 1179, ¶ 11-13 (filling out an Elyria Police Department "Citizen Complaint Report" did not constitute filing a complaint, adopting the Crim.R. 3 definition).

{¶ 27} One could distinguish *Davenport* because that accusation was only by a tape recorded statement to a detective, not a written and signed accusation. *McCaleb* too involved an unsigned, faxed accusation form disputing a trooper's trial testimony, and there was no follow-up by the defendant. And *Lester* and *English*, municipal court cases, have less precedential influence. But we do not dwell on distinctions with these cases because we conclude they are all fundamentally wrong. These cases each suggest or determine that a defendant must file a Crim.R. 3 type of complaint in court to be prosecuted for a false accusation of police misconduct. They each fail to recognize that

a private citizen has no authority and *cannot* file a criminal complaint in court. They each fail to recognize that an accusation found to be demonstrably false upon thorough investigation will never result in a Crim.R. 3 complaint against the officer because the accusation is known to be false. Yet those cases incorrectly use what we believe to be a wholly inapplicable and narrow definition for interpreting R.C. 2921.15(B). Each of the cases also fails to address the intentional harm the legislature desired to prohibit that is caused by knowingly making a false accusation, "a false complaint," whether criminal, civil, or administrative, against a peace officer.

{¶ 28} Hanson's written submission was a form titled as a "Witness Statement" mostly containing his own handwriting describing the assaults. Although not notarized, the bottom of the form stated: "By signing my name below, I swear or affirm that this statement is true to the best of my knowledge and belief." It was signed by Hanson and a "witnessing officer." Given the facts we have detailed and this document, we conclude the evidence was sufficient to find that Hanson filed a complaint for purposes of R.C. 2921.15(B).

{¶ 29} Hanson's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 30} Under his second assignment of error, Hanson contends that there was insufficient evidence for the trial court to find that he "knowingly" filed a complaint within the meaning of R.C. 2921.15(B). "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2d Dist.

Montgomery No. 27718, 2018-Ohio-2424, ¶ 7, citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 31} A person acts "knowingly" when he is aware that his conduct probably will cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). Here the comprehensive documentation submitted to the court reveals Hanson was arrested at about 3:00 a.m. on October 27, 2017. He was released from jail on October 28, 2017 at 9:41 a.m. He appeared at the Miamisburg police department to make his complaint at about 5:00 p.m. that day. Sgt. Keefer met with him and, among other things, had him sign a printout of R.C. 2921.15 describing the offense of making a false allegation against a peace officer. The printed date and time on that form is "10/28/2017, 5:27PM." Hanson completed his witness statement. The police reports and medical records assembled provide absolutely no support for Hanson's allegations. The trial court commented based on the documentation that there was "more than sufficient evidence to find [Hanson] guilty." Construing the circumstances and documentation in favor of the State, we agree.

{¶ 32} The second assignment of error is overruled.

**Third Assignment of Error**

{¶ 33} Under his third assignment of error, Hanson contends that R.C. 2921.15 is unconstitutional because it criminalizes free speech. Upon review, we find that Hanson waived his challenge to the constitutionality of R.C. 2921.15 by failing to raise the issue at the trial court level. *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. While reviewing courts have discretion to consider a waived constitutional challenge to a statute, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, in exercising our discretion, we decline to consider the constitutionality of R.C. 2921.15 for the first time on appeal. Accordingly, Hanson's third assignment of error is overruled.

## Conclusion

{¶ 34} Having overruled each of Hanson's assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . .

WELBAUM, P.J., concurs.

DONOVAN, J., concurs in judgment only.

Copies sent to:

Christine L. Burk
Hilary Lerman
Hon. Robert W. Rettich, III