**[Cite as *State v. Nave*, 2020-Ohio-4850.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-33 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-807 |
| | : | |
| MATT NAVE | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of October, 2020.

. . . . . . . . . . .

MARK FEINSTEIN, Atty. Reg. No. 0065183 and ROGER STEFFAN, Atty. Reg. No. 0086330, Prosecuting Attorneys, Champaign County Municipal Court, 205 South Main Street, Urbana, Ohio 43078
      Attorneys for Plaintiff-Appellee

BRYAN HICKS, Atty. Reg. No. 0065022, P.O. Box 359, Lebanon, Ohio 45036
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Matt Nave, appeals from his conviction in the Champaign County Municipal Court after he pled no contest to one count of possession of drug paraphernalia.   In support of his appeal, Nave contends that the explanation of circumstances offered by the State was insufficient to support his conviction.   For the reasons outlined below, we disagree with Nave's claim and find that the evidence was sufficient to establish that Nave knowingly possessed drug paraphernalia with the purpose to use it to ingest illegal drugs.   Therefore, because Nave's conviction for possession of drug paraphernalia was supported by the explanation of circumstances, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On September 6, 2019, the State filed a complaint charging Nave with one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree.   On October 9, 2019, Nave entered a plea of no contest to the charge.   After accepting Nave's no contest plea, the trial court reviewed a written statement of the circumstances surrounding Nave's arrest prepared by Officer Logan Dunn of the Urbana Police Department.   The written statement provided the following information.

{¶ 3} On May 25, 2019, Officer Dunn was on patrol in the city of Urbana, Champaign County, Ohio.   While on duty, Officer Dunn observed a 1997 Chevrolet truck pass his police cruiser on Talbot Street.   After the truck passed by, Officer Dunn ran the license plate of the truck and discovered that the license plate was registered to a 2005 Jeep.   Given this discrepancy, Officer Dunn initiated a traffic stop and approached the

driver, who was identified as Nave.

{¶ 4} After identifying Nave through his driver's license, Officer Dunn advised Nave that the license plate on his truck was registered to a 2005 Jeep under the name Marcie Cano from Westerville, Ohio. In response, Nave stated that he had just bought the truck from a friend named Seth Little. Nave claimed that Little acted as the "middle man" and that the previous owner of the truck was Dakota Kelly from Springfield, Ohio.

{¶ 5} Nave thereafter provided Officer Dunn with the title to the truck. Officer Dunn reviewed the title and observed that it was not notarized and that it had a signature which appeared to be from Dakota Kelly. After reviewing the title, Officer Dunn asked Nave where he received the license plate. Nave responded that the license plate was on the vehicle when he purchased it. Sergeant Shawn Schmidt then arrived at the scene and advised Officer Dunn that Nave had had insurance on the vehicle for approximately six months.

{¶ 6} While speaking to Nave about the truck, Officer Dunn noticed that Nave was very talkative and moving around a lot. Officer Dunn also observed a knife on Nave's person. After observing the knife, Officer Dunn asked Nave if he had any weapons. Nave claimed that he did not have any weapons and took several items out of his pockets. Officer Dunn then checked Nave for weapons and felt a cylindrical object in Nave's pocket. When Officer Dunn asked what the cylindrical object was, Nave pulled the item out of his pocket. Officer Dunn identified the object as a red, cylindrical tube of an ink pen that contained a white, powdery substance. Based on his training and experience, Officer Dunn knew that hollowed out cylindrical items such as ink pens or straws are used to ingest or snort illicit drugs.

**{¶ 7}** Sergeant Schmidt also located a white, powdery substance on the blade of Nave's knife. Based on his training and experience, Officer Dunn knew that drug users use knives to cut small portions of illicit drugs into smaller pieces. Officer Dunn seized Nave's knife and the pen tube found in Nave's pocket and placed them inside his police cruiser.

**{¶ 8}** When initially questioned about the pen tube, Nave told Officer Dunn that he had found the pen tube in a parking lot of a Speedway gas station in Springfield, Ohio. However, upon further questioning, Nave told Officer Dunn that he had found the pen tube in the bed of his truck underneath the truck bed liner. Nave then advised Officer Dunn that the pen tube likely belonged to his girlfriend's brother. When Officer Dunn asked Nave why the pen tube was in his pocket, Nave stated that he simply picked it up and put it there.

**{¶ 9}** After conducting a consensual search of Nave's vehicle, Officer Dunn asked Nave to perform standardized field sobriety tests. Nave agreed, but he advised Officer Dunn that he had had many serious injuries including multiple strokes and a serious head injury from a car accident in 2016. Nave also advised Officer Dunn that he had suffered brain injuries and that his right side was comprised mostly of titanium. Nave, however, told Officer Dunn that he did not have any issues with his eyes.

**{¶ 10}** With this information in mind, Officer Dunn tested Nave and observed signs of impairment. For instance, during the modified Romberg test, Officer Dunn observed that Nave could not tilt his head back and that he had eyelid tremors. Then, during the walk and turn test, Officer Dunn noticed that Nave started the test before the instructions were completed, held his hands further than six inches away from his body to maintain

balance, made incorrect turns, and stepped off the line as he was walking. Also, during the one-leg stand test, Officer Dunn observed that Nave had very rigid body posturing, held his hands further than six inches away from his body to maintain balance, and put his foot down three separate times before Officer Dunn could count to ten.

{¶ 11} Following the administration of the field sobriety tests, Officer Dunn field tested the white, powdery substance inside the pen tube. The substance tested positive for methamphetamine. The pen tube was sent to the Ohio Bureau of Criminal Investigation ("BCI") for further testing. The BCI test results also came back positive for methamphetamine. Prior to entering his no contest plea, Nave indicated that he was not challenging the BCI test results and stipulated to the contents of the BCI report. There is no indication that the white, powdery substance on Nave's knife was ever tested.

{¶ 12} Based on the foregoing information, the trial court found Nave guilty of possession of drug paraphernalia. The trial court then sentenced Nave to serve 30 days in jail with 29 days suspended and one day of jail-time credit. The trial court also ordered Nave to pay a $250 fine and to serve one year of probation. Nave now appeals from his conviction, raising a single assignment of error for review.

## Assignment of Error

{¶ 13} Under his assignment of error, Nave contends that the explanation of circumstances provided an insufficient basis for the trial court to find him guilty of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). We disagree.

{¶ 14} "On a plea of no contest to a misdemeanor offense, R.C. 2937.07 provides that a court may find the defendant guilty or not guilty based on 'the explanation of the

circumstances of the offense.' "  (Footnote omitted.)  *State v. Wieckowski*, 2d Dist. Clark No. 2010-CA-111, 2011-Ohio-5567, ¶ 4.  "Although R.C. 2937.07 does not define the phrase 'explanation of circumstances,' it requires evidence sufficient to demonstrate the accused's criminal liability for the offense charged."  (Citation omitted.)  *State v. Osterfeld*, 2d Dist. Montgomery No. 20677, 2005-Ohio-3180, ¶ 6.  Therefore, the explanation of circumstances "necessarily, involves, at a minimum, some positive recitation of facts which, if the court finds them to be true, would permit the court to enter a guilty verdict and a judgment of conviction on the charge to which the accused has offered a plea of no contest."  *State v. Keplinger*, 2d Dist. Greene No. 98-CA-24, 1998 WL 864837, *3 (Nov. 13, 1998); *Osterfeld* at ¶ 6.  "Documentary evidence may suffice as an explanation of the circumstances supporting the charge, provided the record demonstrates that the trial court actually considered that evidence in determining Defendant's guilt or innocence."  (Citations omitted.)  *State v. Mazzone*, 2d Dist. Montgomery No. 18780, 2001 WL 1141822, *2 (Sept. 28, 2001).  *Accord State v. Schornak*, 2d Dist. Greene No. 2014-CA-59, 2015-Ohio-3383, ¶ 11.

{¶ 15} "Appellate courts 'review the explanation of circumstances to determine if there is sufficient evidence in the record to establish all of the elements of the offense.' " *State v. Hanson,* 2019-Ohio-3688, 143 N.E.3d 1178, ¶ 15 (2d Dist.), quoting *State v. O'Brien*, 5th Dist. Licking No. 17-CA-14, 2017-Ohio-7219, ¶ 35, citing *Cuyahoga Falls v. Bowers*, 9 Ohio St.3d 148, 150, 459 N.E.2d 532 (1984).  "In doing so, appellate courts utilize a de novo standard of review[,]" which requires an " ' "independent review of the trial court's decision without any deference to the trial court's determination." ' "  *Id.*, quoting *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5, quoting

*Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.).

{¶ 16} As previously noted, the explanation of circumstances for Nave's offense was set forth in a written statement prepared by Officer Dunn. The record indicates that after Nave entered his no contest plea, the trial court reviewed the written statement and found Nave guilty of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). Pursuant to that statute: "[N]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." R.C. 2925.14(C)(1). The term "drug paraphernalia" includes "a container or device for storing or concealing a controlled substance." R.C. 2925.14(A)(11).

{¶ 17} This court has explained that R.C. 2925.14(C)(1) "imposes a dual requirement of proof on the State" in that the State "must prove that the defendant knowingly possessed drug paraphernalia" and that "the defendant intended to use the paraphernalia to ingest illegal drugs." *State v. Smith*, 2d Dist. Clark No. 3013, 1994 WL 43105, *3 (Jan. 7, 1994). Thus, in order to support Nave's conviction, the explanation of circumstances in this case must have established that Nave knowingly possessed the pen tube containing methamphetamine with the purpose or intention of using it to ingest illegal drugs. *See State v. Richards*, 2d Dist. Montgomery No. 27139, 2017-Ohio-1198, ¶ 18; *State v. Foster*, 2d Dist. Montgomery No. 17860, 2000 WL 216937, *2 (Feb. 25, 2000).

{¶ 18} Nave does not contest the fact that Officer Dunn found the pen tube on his person or that the pen tube contained methamphetamine. Since there is no dispute that the pen tube found on Nave's person stored or concealed a controlled substance, Nave

concedes that the evidence was sufficient to establish that he was in possession of drug paraphernalia. Nave, however, claims that the explanation of circumstances failed to establish that he: (1) *knowingly* possessed drug paraphernalia; or (2) that he intended to use the drug paraphernalia to ingest illegal drugs.

*(1) Knowingly Possessed Drug Paraphernalia*

**{¶ 19}** Upon review, we find that there was sufficient evidence for the trial court to conclude that Nave knowingly possessed drug paraphernalia as required for a violation of R.C. 2925.14(C)(1).

**{¶ 20}** "Knowingly" is a culpable mental state defined under R.C. 2901.22(B), which provides that:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶ 21}** "[T]he element of knowledge is to be determined from the attendant facts and circumstances particular to each case." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998); *State v. Ramos*, 2d Dist. Montgomery No. 28214, 2019-Ohio-3588, ¶ 41.

**{¶ 22}** In this case, and as noted above, Nave does not contest the fact that Officer Dunn discovered the pen tube in his pocket. The explanation of circumstances indicated that when Officer Dunn asked Nave about the pen tube, Nave initially stated that he found the pen tube in a gas station parking lot, and then later stated that he found it in the bed of his truck. The explanation of circumstances further indicated that Nave told Officer Dunn that he put the pen tube in his pocket after finding it. This information clearly indicated that Nave was aware of the fact that he was in possession of the pen tube. Thus, we find sufficient evidence existed for the trial court to conclude that Nave knowingly possessed the pen tube. Because there is no dispute that the pen tube is drug paraphernalia, there was sufficient evidence for the trial court conclude that Nave knowingly possessed drug paraphernalia as required for a violation of R.C. 2925.14(C)(1).

### (2) Intent to Use the Drug Paraphernalia to Ingest Illegal Drugs

**{¶ 23}** We also find that there was sufficient evidence for the trial court to conclude that Nave possessed the drug paraphernalia with the purpose/intent to ingest illegal drugs.

**{¶ 24}** "Purposefully" is a culpable mental state defined under R.C. 2901.22(A), which provides that:

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in

conduct of that nature.

{¶ 25} "Purpose or intent is a state of mind which is usually not susceptible to proof by direct evidence, unless expressly stated." *Smith*, 2d Dist. Clark No. 3013, 1994 WL 43105, at *2. "More often than not, purpose or intent must be established from reasonable inferences drawn from other proven facts and circumstances in the case, that is, by circumstantial evidence." *Id.*, citing *State v. Johnson*, 56 Ohio St.2d 35, 381 N.E.2d 637 (1978).

{¶ 26} This court has held that evidence establishing that a defendant possessed drug paraphernalia containing drug residue was sufficient circumstantial evidence of intent to use the drug paraphernalia to ingest illegal drugs. *See, e.g., Richards*, 2d Dist. Montgomery No. 27139, 2017-Ohio-1198, at ¶ 21 ("It is undisputed that the glass pipe recovered by [the officer] contained residue that laboratory analysis identified as cocaine and methamphetamine. From this evidence alone, the trial court could have inferred Richards' intent to use the pipe if it was satisfied by this evidence beyond a reasonable doubt."); *Foster*, 2d Dist. Montgomery No. 17860, 2000 WL 216937, at *2 ("The fact that a defendant charged with Possession of Drug Paraphernalia is in possession of a crack pipe containing crack cocaine residue is * * * circumstantial evidence that might support a reasonable inference that the possession of the crack pipe was with purpose to use it.").

{¶ 27} In this case, there is no dispute that the pen tube found in Nave's pocket contained a substance that tested positive for methamphetamine. According to this court's precedent, the presence of the methamphetamine inside the pen tube alone would amount to sufficient circumstantial evidence of intent to use the pen tube to ingest illegal drugs. However, even if that were not the case, there was other circumstantial evidence

that supported the intent-to-use element.

{¶ 28} In the explanation of circumstances, Officer Dunn stated that based on his training and experience, drug users often use hollowed out cylindrical items such as the "tube body of ink pens" to ingest illicit drugs. The fact that the methamphetamine in this case was contained in such a pen tube was circumstantial evidence demonstrating that the pen tube was possessed with the purpose to ingest the methamphetamine contained therein.

{¶ 29} The explanation of circumstances also indicated that the knife taken from Nave's person had a white, powdery substance on its blade, and that the methamphetamine found in the pen tube was also a white, powdery substance. Although the substance on the knife was not tested, the fact that it was a white, powdery substance like the methamphetamine in the pen tube, permitted a reasonable inference that the substance on the knife was also methamphetamine. Officer Dunn stated that based on his training and experience, drug users use knives to cut small portions of illicit drugs into smaller pieces. Accordingly, the white, powdery substance on the knife provided further circumstantial evidence of Nave's intent to ingest the methamphetamine in the pen tube. As a further matter, the white, powdery substance found on the knife tended to discredit Nave's claim that he simply found the pen tube and put it in his pocket. If that had been the case, the white, powdery substance would only have been found inside the pen tube and not on other items belonging to Nave, such as the knife.

{¶ 30} The explanation of circumstances further indicated that Nave changed his story when Officer Dunn asked him where he found the pen tube. As previously noted, Nave initially claimed that he found it at a gas station, and then later claimed that he found

it in his truck bed. In addition, Officer Dunn stated that prior to finding the pen tube, Nave was very talkative and moving around a lot. Although these circumstances did not directly establish that Nave intended to use the pen tube to ingest drugs, given that methamphetamine was found on his person, they permit a reasonable inference that Nave was concealing illegal activity, such as drug use, which could have been facilitated through the methamphetamine in the pen tube.

{¶ 31} Lastly, the explanation of circumstances indicated that Nave showed signs of impairment during his field sobriety testing. Since Nave had severe, pre-existing injuries from a 2016 car accident, the results of his field sobriety testing did not necessarily indicate drug use. However, the fact that Nave showed signs of impairment at a time when he happened to have methamphetamine on his person did permit a reasonable inference that Nave's impairment was possibly caused, at least in part, by ingesting the drugs in the pen tube.

{¶ 32} In light of the foregoing, after conducting a de novo review of the explanation of circumstances provided to the trial court, we find that there was sufficient evidence to find Nave guilty of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). That is, the explanation of circumstances sufficiently established that Nave knowingly possessed drug paraphernalia with the purpose to use the drug paraphernalia to ingest illegal drugs.

{¶ 33} Nave's sole assignment of error is overruled.

### Conclusion

{¶ 34} Having overruled Nave's assignment of error, his judgment of conviction is

affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mark Feinstein
Roger Steffan
Bryan Hicks
Hon. Gil S. Weithman