**[Cite as *Olthaus v. Niesen*, 2023-Ohio-4710.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RYAN OLTHAUS, | : | APPEAL NO. C-230142 |
| | | TRIAL NO. A-2002596 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JULIE NIESEN, | : | |
| JAMES NOE, | : | |
| TERHAS WHITE, | : | |
| and | : | |
| ALISSA GILLEY, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 27, 2023

*Gottesman & Associates, LLC*, and *Zachary Gottesman*, for Plaintiff-Appellant,

*Laursen, Colliver & Mellott, LLC*, and *Erik W. Laursen*, for Defendant-Appellee Julie Niesen.

*Whittaker Law, LLC*, and *Justin Whittaker*, for Defendant-Appellee James Noe,

*Santen & Hughes, J. Robert Linneman* and *H. Louis Sirkin*, for Defendants-Appellees Terhas White and Alissa Gilley.

**BERGERON, Judge.**

{¶1} Defamation law allows for the vindication of one's good name and for the redress of harm caused to one's reputation resulting from the publication of false and offensive statements of fact. Fundamentally, though, civil liability for speech exists in tension with protections for freedom of speech afforded by the U.S. Constitution and the Ohio Constitution. Under the Ohio Constitution, specifically, defendants enjoy constitutional protection for opinion speech, *Scott v. News-Herald*, 25 Ohio St.3d 243, 244-245, 496 N.E.2d 699 (1986), aligning with the principle that "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch*, 418 U.S. 323, 339-340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

{¶2} Faced with public accusations that he is a "white supremacist" who flashed a "white power" hand sign at a demonstration, plaintiff-appellant Ryan Olthaus, a Cincinnati police officer, sought redress through defamation law and several related causes of action. But, as justifiably aggrieved by defendants' assertions as he may feel, defamation law does not allow for recovery when the statements in question constitute opinions (rather than false statements of fact), nor without a showing of actual malice by a public official. Consequently, in line with established principles of defamation law and governing constitutional constraints, we affirm the trial court's dismissal of his various claims.

I.

{¶3} During the wave of racial justice demonstrations that swelled in the summer of 2020, the Cincinnati City Council convened a series of open meetings. At an open forum before the council's budget and finance committee meeting in June

2020, Officer Olthaus was assigned to provide crowd control and security. During an interaction with defendant-appellee Terhas White, who was participating in a demonstration outside the council's chambers, Officer Olthaus flashed an "OK" symbol, pinching together his thumb and index finger. He maintains that he made this gesture in response to Ms. White asking him about the status of his fellow officer who had recently left the area after an interaction with demonstrators. She and the other defendants-appellees (collectively, "Defendants"), however, saw things very differently. In various ways, they publicly criticized Officer Olthaus and his gesture, describing him, primarily in social media posts, as a "white supremacist" and calling the gesture a "white power" hand sign.

{¶4} Officer Olthaus filed suit in July 2020 against five defendants and multiple John Does, but only four defendants remain for the purposes of this appeal. His complaint alleges defamation, false light invasion of privacy, negligence, and recklessness against all four defendants. Further, he claims defendants Ms. White and Alissa Gilley are liable for civil damages under R.C. 2307.60 for harming him in a criminal act—namely, for making a false allegation against a peace officer in violation of R.C. 2921.15.

{¶5} Broadly, the complaint contends that Defendants spread various false and defamatory statements about Officer Olthaus. Specifically, he alleges that Ms. White published social media posts referring to him as a "white supremacist kkkop" and "white supremacist piece of shit," and that Julie Niesen made posts in a similar vein. He also alleges that Ms. White knowingly submitted a false complaint with the city's Citizen Complaint Authority ("CCA"), accusing him of using a "white power" hand signal on the job. He accuses Ms. Gilley of filing a similar complaint with the

3

CCA in which she asserts that he "[threw] up a white supremacy hand-signal towards citizens of color," which she perceived as "a threat to me, my children and so many others." Finally, he claims that James Noe posted a profane insult about him on social media in the context of saying that he flashed "white power symbols to Black speakers," and that Mr. Noe posted a "deceptively edited photograph" of Officer Olthaus designed to portray him as a "white supremacist." He also claims Mr. Noe threatened to publicize his personal identifying information on social media.

{¶6} After various orders and appeals, Defendants moved to dismiss all claims under Civ.R. 12(B)(6) in June and July 2022. *See State ex rel. Cincinnati Enquirer v. Shanahan*, 166 Ohio St.3d 382, 2022-Ohio-448, 185 N.E.3d 1089, ¶ 43 (granting "writs of mandamus ordering [the trial court] to allow complete public access to" Officer Olthaus' affidavit and "barring [the trial court] from allowing [Officer Olthaus] to proceed using a pseudonym"); *M.R. v. Niesen*, 167 Ohio St.3d 404, 2022-Ohio-1130, 193 N.E.3d 548, ¶ 1, 14 (dismissing as moot an appeal of the trial court's temporary restraining order prohibiting Defendants from publishing Officer Olthaus' personal identifying information). Concluding that all of Defendants' statements were either true or constitutionally protected statements of opinion, the court dismissed the defamation, false light, negligence, and recklessness claims. Additionally, it determined that Mr. Noe's alleged threat to release Officer Olthaus' personal information did not constitute defamation or false light invasion of privacy because it was not a false statement. Finally, the court held that Officer Olthaus could prove no facts necessary to warrant recovery under R.C. 2307.60.

4

{¶7} He now appeals, presenting a single assignment of error attacking the trial court's dismissal of his defamation, false light, and statutory claims (he does not contest the dismissal of the negligence and recklessness claims).

II.

{¶8} In reviewing a trial court's grant of a motion to dismiss for failure to state a claim under Civ.R. 12(B)(6), we assess the sufficiency of the complaint, taking all allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Mere unsupported conclusions regarding the elements of a claim are not taken as admitted and are insufficient to withstand a motion to dismiss without sufficient factual support. *Id.* at 193. Still, under Ohio's relaxed "notice-pleading" standard, courts grant motions to dismiss "only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Greenwood v. Taft*, 105 Ohio App.3d 295, 297, 663 N.E.2d 1030 (1st Dist.1995), citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975); *Maternal Grandmother, ADMR v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, ¶ 10 ("Ohio is a notice-pleading state."). We review the trial court's decision to grant a motion to dismiss under Civ.R. 12(B)(6) de novo. *Inwood Village, Ltd. v. City of Cincinnati*, 1st Dist. Hamilton No. C-110117, 2011-Ohio-6632, ¶ 8.

A.

{¶9} Before turning to the substance of the trial court's grants of dismissal, we first address the manner in which Officer Olthaus contests the trial court's decision on appeal. Faced with the trial court's dismissal of his defamation and related claims

on the basis that Defendants' statements were either true or matters of opinion, Officer Olthaus fails to directly address the trial court's reasoning on appeal. Instead, he emphasizes the notice-pleading standard and the harm that Defendants' statements occasioned, responding to the trial court's reasoning only to assert that "[i]n the political atmosphere that existed at the time of the incident, Appellees' statements rose above mere opinion when they were designed to personally attack and cause harm." But this statement does not reflect the standard for recovery under Ohio defamation law. Tellingly, Officer Olthaus cites no case law to support this argument, does not suggest the trial court used the wrong legal standard in its decision, and does not assert that it misapplied any relevant case law. Rather, he broadly asserts that the trial court got it wrong and assures us that he could prove his point later in the litigation. Such an argument does not provide us with any basis for reversal. It is incumbent upon an appellant to explain to us, with citations to authority and the record, how the trial court erred.

{¶10} Likewise, he advances no substantive argument responding to the trial court's conclusion that he failed to plead actual malice and that "[a]ctual malice cannot be established in this case." He merely asserts that, "given the opportunity," he could demonstrate the falsity of the assertions and Defendants' reckless disregard for them. Again, he fails to advance any argument for *how* he would prove such a point, which ultimately rests on the trial court's conclusions that statements of opinion cannot be made with actual malice and are not actionable in defamation.

{¶11} Officer Olthaus' "failure to develop an authority-based argument provides sufficient grounds to" reject his appeal and to affirm the judgment of the trial court. *Ohiotelnet.com, Inc. v. Windstream Ohio, Inc.*, 137 Ohio St.3d 339, 2013-Ohio-

4721, 999 N.E.2d 586, ¶ 16-17; *see* App.R. 16(A)(7); 1st Dist. Loc.R. 16.1(A)(4); *Util. Serv. Partners v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53. Notwithstanding this conclusion, in the alternative, we proceed to address the substance of the issues as we understand them on appeal, albeit without the benefit of specific argument from Officer Olthaus.

B.

**{¶12}** Generally, "[t]o establish defamation, the plaintiff must show (1) that a false statement of fact was made; (2) that the statement was defamatory; (3) that the statement was published; (4) that the plaintiff suffered injury as a proximate result of the publication; and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-090747, 2010-Ohio-3963, ¶ 12. All defamation is either defamatory per quod (in the interpretation of the listener) or defamatory per se (on its face). *Williams v. Gannett Satellite Information Network, Inc.*, 162 Ohio App.3d 596, 2005-Ohio-4141, 834 N.E.2d 397, ¶ 7 (1st Dist.); *Carr v. Educational Theatre Assn.*, 2023-Ohio-1681, 215 N.E.3d 584, ¶ 12-13 (1st Dist.).

**{¶13}** Additionally, the First Amendment of the U.S. Constitution requires that plaintiffs who are public figures or officials, like police officers, show that the defendant's statement was made with "actual malice," which is "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see Soke v. The Plain Dealer*, 69 Ohio St.3d 395, 397, 632 N.E.2d 1282 (1994). "Actual malice" in this context is a legal term of art distinct from traditional, common-law malice, which generally "connotes ill will, hatred, [or] a spirit of revenge." *Varanese v. Gall*, 35 Ohio

St.3d 78, 79, 518 N.E.2d 1177 (1988), citing *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), syllabus. "Evidence of hatred, spite, vengefulness, or deliberate intention to harm can never, standing alone, warrant a verdict for the plaintiff" in public official defamation cases. *Id.* at 79-80, citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119, 413 N.E.2d 1187 (1980).

{¶14} As we consider the threshold element of defamation (a false statement of fact), the U.S. and Ohio Supreme Courts describe this inquiry slightly differently, although they essentially arrive at the same place. The U.S. Supreme Court recognizes that federal defamation law bars claims "for statements that cannot 'reasonably [be] interpreted as stating *actual facts*' about an individual," but it has declined to embrace "an additional separate constitutional privilege for 'opinion.' " (Emphasis added.) *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), quoting *Sullivan* at 270. Notwithstanding *Milkovich*, Article I, Section 11 of the Ohio Constitution independently protects opinion speech, both for media and nonmedia defendants. *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 281, 649 N.E.2d 182 (1995); *see Wampler v. Higgins*, 93 Ohio St.3d 111, 125, 752 N.E.2d 962 (2001) (holding nonmedia defendants may invoke the protection); *Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, ¶ 10 (1st Dist.) ("[P]rivate persons, contending in the marketplace of ideas and the give-and-take of the political process, have the same constitutional protections of those who print or broadcast their opinions for money."). Thus, for defamation claims in Ohio, "[t]he focus shifts to whether the language under question is to be categorized as fact or opinion." *Vail* at 282.

{¶15} Ohio courts apply a fluid, four-part, totality of the circumstances test to distinguish between fact and opinion, focusing on the interpretation of an ordinary reader. *Scott v. News-Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986). "Specifically, the court should consider: the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared." *Vail* at 282. Officer Olthaus fails to discuss this test on appeal or to apply it to the facts alleged in the complaint.

{¶16} Ultimately, the plainly subjective, value-based language and non-verifiability of Defendants' various statements dominate our assessment. Considering "the common meaning of the allegedly defamatory statement," *Scott* at 250, an ordinary reader would understand the terms "white supremacist" and "kkkcop" to "lack[] precise meaning." *Vail* at 282. They are inherently value-laden labels and "conjure[] a vast array of highly emotional responses that will vary from reader to reader." *Id*. at 282-283. The same applies for Defendants' interpretation of Officer Olthaus' "OK" hand gesture, which they imbue with a racist meaning, because an ordinary reader would understand that a speaker and interpreter might have different views on what the hand gesture means—a matter on vivid display in this litigation. Additionally, because labels like "white supremacist" " 'lack[] a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content.' " *Scott* at 251-252, quoting *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir.1984). Whether a statement is verifiable depends upon whether it is "objectively capable of proof or disproof," *Wampler*, 93 Ohio St.3d at 129, 752 N.E.2d 962, but Officer Olthaus musters no argument for how someone would plausibly go about proving or disproving one's white supremacist bona fides. Similarly, Defendants'

assertions that Officer Olthaus flashed a "white power" hand sign is not susceptible to reasoned methods of verification. It is undisputed that he made a particular hand gesture—what is disputed turns on the subjective meaning of the gesture, with both the officer and Defendants offering competing interpretations.

{¶17} Under the totality of the circumstances, the statements featured in the complaint represent opinions, rather than facts that can be tested to determine their veracity. Therefore, we agree with the trial court's reasoning, substantively unchallenged on appeal, that the Ohio Constitution insulates Defendants' opinion speech from Officer Olthaus' defamation claims. We further agree with the trial court that Mr. Noe's alleged threat to release his personal information is not a false statement of fact that could constitute defamation.

{¶18} Our conclusion aligns with federal and state case law establishing that accusations of bigotry similar to those present here are not actionable in defamation because such language "is value-laden and represents a point of view that is obviously subjective." *Vail*, 72 Ohio St.3d at 283, 649 N.E.2d 182 (commentary published in newspaper calling public-figure plaintiff a "gay-basher" and a "bigot" who "foster[s] homophobia" protected under Ohio Constitution); *Lennon v. Cuyahoga Cty. Juvenile Court*, 8th Dist. Cuyahoga No. 86651, 2006-Ohio-2587, ¶ 31 (coworker's workplace accusation that plaintiff was a "racist" constitutionally protected); *Condit v. Clermont Cty. Rev.*, 110 Ohio App.3d 755, 760, 675 N.E.2d 475 (12th Dist.1996) (accusations that plaintiff was a " 'fascist,' and an 'anti-Semite,' contain elements of hyperbole and ambiguity" and thus are opinion and not actionable as defamation; collecting federal case law establishing that "accusations of ethnic bigotry are not actionable as defamation"). Applying the *Scott* test, reiterated in *Vail*, we reach the same conclusion

here and find that Officer Olthaus failed to allege an actionable claim. Accordingly, the trial court did not err in dismissing his defamation claims.

{¶19} Though the above conclusion suffices to affirm the trial court's dismissal of the defamation claims, we further agree with the trial court that Officer Olthaus failed to sufficiently plead actual malice. In his complaint, he refers only to Defendants' "malicious" conduct and "false" statements, avoiding both the phrase "actual malice" and the critical test from *New York Times Co. v. Sullivan* for public official defamation plaintiffs: that the defendant acted with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686. Rather, he merely alleges a state of mind resembling negligence—that Defendants "made statements that they knew or should have known were false."

{¶20} Apart from failing to recite the required language, Officer Olthaus also fails to allege any facts showing that Defendants acted with actual malice. The closest he comes is in accusing Ms. White and Ms. Gilley of "falsely" accusing him of using a "white power" hand signal in their citizens' complaints. Even generously construing his assertions as invoking the standard of "actual malice" and taking them as true, we agree with the trial court that this "fact" cannot suffice as pleading "actual malice" because the assertions are either true or statements of opinion. Officer Olthaus admits to making the gesture, so that fact is true, but he vigorously contests its meaning. But, as we indicated above, Defendants' various assertions that Officer Olthaus is a "white supremacist" and that his gesture carried a racist meaning are fundamentally statements of opinion. Accordingly, Officer Olthaus could plead no set of facts that, even taken as true, would legally suffice to accuse Defendants of making these

11

accusations with "knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *See id.*

**{¶21}** We recognize and appreciate Officer Olthaus' point that the allegations of white supremacy were incredibly damaging to him, personally and professionally. Social media has the capacity to ruin lives with the click of a button, but courts do not exist to referee debates on those platforms, nor could we do so consistent with the First Amendment and the Ohio Constitution. Indeed, "[t]he First Amendment militates the protection of unrestricted and hearty debate on issues of concern to the public, including the protection of what 'may well include vehement, caustic, and sometimes unpleasantly sharp attacks.' " *Scott*, 25 Ohio St.3d at 255, 496 N.E.2d 699 (Douglas, J., concurring), quoting *Sullivan* at 270. And the Ohio Constitution, like the U.S. Constitution, "protects expression and association without regard to the race, creed, or political or religious affiliation of the members of the group which invokes its shield, or to the truth, popularity, or social utility of the ideas and beliefs which are offered." *NAACP v. Button*, 371 U.S. 415, 444-445, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *see Scott* at 255 (Douglas, J., concurring). Notwithstanding the deleterious consequences of allegations of white supremacy, the courts cannot provide a remedy unless the requirements of defamation are satisfied.

**{¶22}** On the record at hand, because Officer Olthaus failed to plead any set of facts that would entitle him to relief, the trial court did not err in dismissing the defamation claims.

C.

**{¶23}** We now turn to the trial court's dismissal of Officer Olthaus' claims for false light invasion of privacy, a cause of action officially recognized in Ohio since 2007:

> In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 61, citing Restatement of the Law 2d, Torts, Section 652E (1977). Although this cause of action bears similarities to defamation, a plaintiff need not be defamed to pursue such a claim. *Id.* at ¶ 52-53 (noting that false light claims require the information be "publicized," which is distinct from and less stringent than "published," as required for defamation claims); *see Dudee v. Philpot*, 2019-Ohio-3939, 133 N.E.3d 590, ¶ 82 (1st Dist.) ("False-light claims are separate and distinct from defamation because they protect a different interest—harm to character, reputation, or trade (defamation) vs. publicity of false information (false light))."

**{¶24}** Even so, "[f]alse-light defendants enjoy protections at least as extensive as defamation defendants." *Welling* at ¶ 58. For example, for a statement to be actionable in false light, just like in defamation, "the statement made must be untrue." *Id.* at ¶ 48, 52 ("The right to privacy naturally extends to the ability to control *false statements* made about oneself." (Emphasis added.)). Accordingly, because

statements of opinion are inherently not even capable of being "untrue," and because a defendant therefore cannot have "had knowledge or acted in reckless disregard as to the falsity" of such statements, opinions cannot support false light invasion of privacy just as they cannot establish defamation. *Id.* at ¶ 52, 58, 61; *see* Ohio Constitution, Article I, Section 11.

**{¶25}** Applying our analysis above, we conclude that Defendants' opinion speech is constitutionally protected from false light claims. Additionally, the false light requirement that the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed" mirrors the "actual malice" requirement for public official defamation plaintiffs. *Welling* at ¶ 58, 61; *Sullivan*, 376 U.S. at 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686. Therefore, for the same reasons described above in the defamation context, Officer Olthaus failed to plead facts showing that Defendants acted with the requisite state of mind for false light claims. For both reasons, the trial court did not err in dismissing his false light claims.

D.

**{¶26}** We next address the trial court's dismissal of Officer Olthaus' claims against Ms. White and Ms. Gilley under R.C. 2307.60, which provides an independent civil cause of action for any person injured by another in the commission of a criminal act unless otherwise prohibited by law. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 10. He alleges that they each injured him through the criminal activity of knowingly filing a false complaint against a peace officer under R.C. 2921.15. R.C. 2921.15(B) ("No person shall knowingly file a complaint against a peace officer that alleges that the peace officer engaged in misconduct in the

performance of the officer's duties if the person knows that the allegation is false."). Specifically, the complaint explains that they filed complaints with Cincinnati's CCA, claiming variously that Officer Olthaus engaged in misconduct, threatened them, and posed a threat to the community, focusing on his alleged "white power" hand sign.[1] But this claim ultimately runs headlong into the same problems we described above regarding pleading actual malice because the statute requires a false complaint against a police officer "know[ing] that the allegation is false." Fundamentally, Officer Olthaus cannot satisfy that standard because the meaning of the hand sign is subject to interpretation and is not a verifiable fact. Accordingly, the trial court did not err in dismissing Officer Olthaus' R.C. 2307.60 claims.

E.

**{¶27}** Finally, we briefly address Officer Olthaus' argument that the trial court should have allowed him leave to amend his complaint to fix any defects rather than granting the motions to dismiss. The trial court granted the motions, rather than sua sponte granting leave to amend, because the latter "would [have been] futile as there simply are no additional facts to allege." *See Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 14 ("a trial court properly refuses to grant leave to amend when amendment would be futile."). Generally, we review a trial court's denial

---

[1] Ms. White and Ms. Gilley argue that filing a complaint with the CCA does not fit the definition of "fil[ing] a complaint" under R.C. 2921.15, claiming that only complaints meeting the definition of "complaint" contemplated in Crim.R. 3 would suffice. We note that Ohio appellate courts appear split on this issue. *See State v. Hanson*, 2019-Ohio-3688, 143 N.E.3d 1178, ¶ 19, 26 (2d Dist.) (holding that R.C. 2921.15 does not require the defendant to file a formal, criminal complaint under Crim.R. 3 but recognizing and collecting cases drawing different conclusions on the issue). But because we resolve Officer Olthaus' overarching claims under R.C. 2307.60 on other grounds, and because the issue was not substantially briefed, we decline to address this argument. For the same reasons, we decline to address Ms. White and Ms. Gilley's argument that the statute violates the First Amendment to the U.S. Constitution.

of leave to amend for an abuse of discretion, *Elliot v. Durrani*, 2021-Ohio-3055, 178 N.E.3d 977, ¶ 62 (1st Dist.), but in this case Officer Olthaus never moved for leave to amend, tendered an amended complaint for the court's consideration, or explained in the trial court or on appeal exactly how he would have cured any deficiencies. A court cannot simply assume that a picture-perfect complaint could be drafted that would alleviate any of its concerns.

{¶28} Moreover, as discussed above, Officer Olthaus fails to challenge the trial court's underlying legal conclusion motivating the dismissals—that Defendants' statements were constitutionally protected. Without a recognition of that point, any imagined request for amendment would be wholly futile. Thus, he fails to present any substantive argument for how the trial court erred in failing to grant leave to amend.

\*　　\*　　\*

{¶29} Ultimately, we conclude that the trial court did not err in dismissing Officer Olthaus' claims. We overrule his sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

CROUSE, P.J., and ZAYAS, J., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.