[Cite as *Guthrie v. Guthrie*, 2024-Ohio-5581.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JILL GUTHRIE, | : | APPEAL NO. C-240245 |
| | | TRIAL NO. 2022001597 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| JEAN GUTHRIE, | : | |
| and | : | |
| REGINA LYNNE BOWMAN, | : | |
| Defendants-Appellees. | : | |

Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 27, 2024

*Leslie F. Thomas, Co., LPA,* and *Leslie F. Thomas,* for Plaintiff-Appellant,

*Pro Seniors, Inc.,* and *Tracye T. Hill,* for Defendants-Appellees.

**BERGERON, Judge.**

**{¶1}** This case involves a relationship between a mother and daughter that soured when the mother suspected that her daughter misappropriated funds while acting as her power of attorney. That suspicion prompted the mother to revoke her previously-executed power of attorney in favor of her daughter and reassign the financial powers to her half-sister. Convinced that her mother was mentally incompetent to take this step, the daughter initiated a guardianship action. But the court refused her request to appoint herself as her mother's guardian. Unsatisfied with the first adverse judgment, the daughter commenced a civil action, requesting that the probate court set aside her mother's revocation and reassignment of the power of attorney. After sifting through various procedural twists and turns, and considering dueling motions for summary judgment in this case, the probate court ultimately ruled in the mother's favor and held that the daughter owed her mother more than $36,000 for misappropriating her assets. The daughter now appeals, but she fails to point to any evidence in the record (or pertinent legal authorities) that would suggest that the trial court went astray. As a result, we find her arguments unpersuasive and affirm the judgment of the probate court.

I.

**{¶2}** In 2013, appellee Jean Guthrie executed a springing durable power of attorney ("2013 POA") in favor of her daughter, appellant Jill Guthrie.[1] The 2013 POA granted Jill the power, among other things, to manage and expend funds for her mother's needs, hire an attorney for her mother's benefit, and make gifts to her mother's descendants. However, those powers could only be exercised if Jean were

---

[1] We refer to the parties by first names in light of their common last names.

declared incompetent by the written certification of two physicians.

{¶3} Jill alleges that her powers under the 2013 POA sprung into effect in 2016 after two physicians determined that Jean was unable to appreciate the severity of her dementia diagnosis and was unable to manage her own affairs. Believing herself duly authorized as the POA, Jill began managing her mother's assets.

{¶4} In 2020, after a stint in the hospital, Jean moved into the Astoria Place nursing home ("Astoria"), as she was unable to return to her previous apartment because Jill (her caregiver at the time) was banned from the premises (for reasons not particularly apparent from the record). This is where our story takes a turn. Jill claims that her mother was unhappy at Astoria, surrounded by inattentive staff that failed to adequately care for her. However, several other individuals testified that Jean expressed a desire to remain at Astoria and that Jill caused disturbances at the facility, as she would scream at the staff and call the facility several times a day to threaten the staff.

{¶5} In March 2021, Jean reportedly suspected that her daughter was mishandling her funds in contradiction of the powers and duties under the 2013 POA. A representative of Astoria also asserted that at one point, Jean's bills from the facility went unpaid. With these swirling concerns, in April of that same year, Jean revoked the 2013 POA in favor of Jill and one month later executed a new financial power of attorney in favor of her half-sister, appellee Regina Lynne Bowman.

{¶6} Angered by this turn of events, and under the belief that her mother lacked the mental capacity to take such actions, Jill filed a guardianship petition in the probate court, requesting her appointment as her mother's guardian. A year-and-a-half after the filing of the petition, the probate court ultimately held that Jean lacked the mental capacity to handle her own affairs and should be appointed a guardian. But

the court rebuked Jill's assertion that it should give no weight to Jean's prior revocation and reassignment of the power of attorney due to her mental capacity, as Jill provided no evidence that her mother lacked the mental capacity to execute the documents at that time. The probate court simultaneously held that Jill was unfit to serve as Jean's guardian, chronicling her unexplained spending of Jean's funds, her failure to provide Astoria with documentation of the 2013 POA or of the events that triggered her powers under the POA (which would have allowed Jill to participate in care conferences and speak to physicians on her mother's behalf), her failure to pay the bills at Astoria, and her failure to cooperate and participate in her mother's care.

{¶7} Unhappy with those results, Jill next filed a civil action in the probate court, which provides the foundation for this appeal. In her complaint, Jill asked the probate court to set aside Jean's 2021 revocation of the 2013 POA and her reassignment of the financial power of attorney in favor of Ms. Bowman. She insisted that Jean lacked the requisite mental capacity to do such and that such actions contravened the 2013 POA's requirement that she receive two positive physician opinions regarding her mental capacity in order to revoke the POA. Jean and Ms. Bowman (collectively, "appellees") moved to dismiss the action on the grounds that the claims had already been adjudicated in the guardianship action. However, the probate court denied that motion, holding that the 2021 reassignment of the financial power of attorney in favor of Ms. Bowman was not at issue in the guardianship action, which meant that the parties could contest that issue.

{¶8} So, the parties proceeded to do so, but not before making the litigation more complicated. The appellees filed several counterclaims, which essentially asserted that Jill breached her fiduciary duties as her mother's power of attorney, committed theft and conversion as to her mother's funds, and was unjustly enriched.

4

Thereafter, both parties filed competing motions for summary judgment on their respective claims.

{¶9} The magistrate denied Jill's motion and partially granted the appellees' motion on the grounds that Jill failed to offer clear and convincing evidence (nor did she generate a genuine dispute of material fact) that her mother lacked the requisite mental capacity in 2021 to revoke and reassign her power of attorney. However, the magistrate held in abeyance the portion of appellees' motion pertaining to their counterclaims, explaining that to properly rule on the motion, it needed an accounting of Jean's funds back to October 2020. Therefore, the magistrate provided Jill additional time to gather the necessary financial documents.

{¶10} Jill filed objections to that decision, which the probate court overruled, adopting the magistrate's decision in full. Now forced to substantiate her spending, Jill tendered some documentation pertaining to the three bank accounts in question, presenting it as an accounting. The magistrate ultimately granted the remainder of the appellees' motion for summary judgment, holding that the "accounting" merely showed the withdrawals from (and transactions made with) Jean's accounts, but beyond Jill's own assertions, she offered no other evidence that those actions were taken for Jean's benefit (e.g., no receipts, no proof of bill payments, etc.). Therefore, no genuine issue of material fact remained as to whether she acted in the best interest of Jean, breached her fiduciary duties, or stole from Jean. Finally, the magistrate held that Jill owed her mother $36,086.59 for her improprieties, including $11,000 in improperly paid attorney's fees for the previous guardianship action, as she provided no authorization or documentation that the action was for Jean's benefit. Jill again objected to the magistrate's findings, but the probate court ultimately overruled those objections and adopted the magistrate's decision in full.

5

{¶11} Jill now appeals to this court, asserting four assignments of error. She first argues that the probate court erred in overruling her objections to the magistrate's decision without conducting an independent review of the matter or holding a hearing, and without issuing findings of fact and conclusions of law. Her last three assignments all essentially assert the same error—that the probate court assessed the incorrect amount of damages against her, because at the time she expended the funds, she was relying on the validity of the 2013 POA.

II.

{¶12} As an initial matter, we find it important to independently address the deficiencies in Jill's appellate brief. The appellant bears the burden to provide legal and factual support for arguments that she brings before this court, as prescribed by the Ohio Rules of Appellate Procedure and our local appellate rules. *See* App.R. 16(A)(7); *see also* Loc.R. 16.1(A)(3)(c) and (4). It is not the job of this court to develop or root through the record and relevant authorities to find support for a party's position. *See Olthaus v. Niesen*, 2023-Ohio-4710, ¶ 11 (1st Dist.) (the defendant's "'failure to develop an authority-based argument provides sufficient grounds to' reject his appeal and to affirm the judgment of the trial court"); *see also Mallory v. Mallory*, 2024-Ohio-5458, ¶ 7 (1st Dist.). An appellant must "present '[a]n argument containing [her] contentions . . . with respect to each assignment of error presented for review *and the reasons in support of the contentions*, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" (Emphasis in original.) *Tyra v. Tyra*, 2022-Ohio-2504, ¶ 23 (1st Dist.), citing App.R. 16(A)(7).

{¶13} Jill's arguments on appeal suffer from a complete lack of references to the record and relevant authorities, while also failing to appropriately develop the few arguments that she does present. Throughout her 21-page brief with four assignments

6

of error, Jill cites to the record *once.* Importantly, Jill is advancing several record-intensive arguments in this appeal, and the lone record citation fails to provide us with an adequate guide as to where in the record any potential error occurred.

**{¶14}** At various points throughout her brief, it is difficult to understand what exactly her position is, and she cites no relevant authority that could guide us in the quest to understanding. She fails to demonstrate how the authorities she does reference are informative in deciding this case. Beyond that, she does not cite a standard of review in three of her four assignments of error, nor explain how she should prevail in light of that standard.

**{¶15}** The failure to cite the record, to cite and discuss relevant authority, and to cite the standard of review, all of which are required by applicable appellate rules, serves as an independent basis for us to overrule her four assignments of error.

III.

**{¶16}** In the alternative, we turn to a brief discussion of the four assignments of error as best we can interpret them without record substantiation. Jill initially asserts that the probate court erred when it adopted the magistrate's decision to grant the appellees' motion for summary judgment because it did not issue findings of fact and conclusions of law, and it did not hold a hearing on the matter or undertake an independent review of the magistrate's decision.

**{¶17}** Under Civ.R. 53(D)(4)(d), if a party timely objects to the magistrate's decision, the trial court "shall undertake an independent review . . . to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Where the party raising objections fails to file the necessary evidence and transcripts with the trial court, we typically review "the trial court's application of the law to its factual findings [for] an abuse of discretion." *Hammond v. Hammond*, 2019-

7

Ohio-1219, ¶ 14 (1st Dist.), citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 1995-Ohio-272. However, while Jill did not file the necessary transcripts from the magistrate proceeding with the probate court upon her objections, the probate court did indicate that it reviewed the audio recording of the proceedings in lieu of the transcripts, and those transcripts are in the record before us. As a result, we review the matter de novo to ensure the probate court appropriately granted summary judgment.

**{¶18}** Jill first claims that the trial court failed to undertake an independent review of the magistrate's decision. We typically "presume[] that the trial court performed an independent analysis in reviewing the magistrate's decision." *Rowell v. Smith*, 2013-Ohio-2216, ¶ 35 (10th Dist.). In essence, Jill argues that the presumption in favor of the regularity of the proceedings below is overcome because the probate court did not independently set forth findings of fact and conclusions of law, nor did it hold a hearing on the matter.

**{¶19}** However, Jill fails to cite any authority that says such actions are *required*. A trial court is not required to "cite any specific portion of a transcript or record" in order to demonstrate that it conducted an independent review. *In re A.M.*, 2020-Ohio-5102, ¶ 39, citing *Giovanni v. Bailey*, 2018-Ohio-369, ¶ 21 (9th Dist.) (applying Civ.R. 53(D)(4)(d)). Even though the probate court here did not set forth its own separate recitation of factual findings or legal conclusions, that alone does not overcome the presumption in favor of the probate court. In fact, in overruling Jill's objections, the probate court explained that it conducted an independent review and in doing so, reviewed the case file and audio recordings. So not only did the probate court confirm that it conducted the necessary review, but Jill also points to no evidence casting doubt on that assertion. Therefore, we are satisfied that the probate court

appropriately conducted an independent review of the magistrate's decision.

**{¶20}** Relatedly, Jill's position that the probate court erred in not detailing any factual findings is incongruous with the procedural posture of the case at that point. Jill's objections prompted the probate court to independently review the magistrate's decision regarding the parties' motions for summary judgment, a motion that is concerned with legal determinations. Generally, a court should not make factual findings in ruling on summary judgment; rather, it should construe the facts in favor of the nonmoving party and determine the propriety of judgment as a matter of law. *See* Civ.R. 56. We are not aware of, and Jill does not point to, any requirement that the probate court make factual findings in this procedural context.

**{¶21}** Furthermore, neither the relevant rules nor this court's precedent require a trial court to hold a hearing upon objections to a magistrate's decision. Civ.R. 53(D)(4)(d) provides that, "[b]efore [ruling on objections], the [trial] court *may* hear additional evidence." (Emphasis added.) In fact, this court held that "Civ.R. 53(D)(4)(d) gives the trial court *broad discretion* in deciding whether to hear additional evidence . . . ." (Emphasis added.) *Maddox v. Maddox*, 2016-Ohio-2908, ¶ 14 (1st Dist.); *see Tillimon v. Myles*, 2020-Ohio-1243, ¶ 15 (6th Dist.) ("There is no requirement that the trial court hold a hearing before ruling on the objections."). The only time a trial court lacks discretion to conduct a hearing is when "the objecting party demonstrates that with reasonable diligence, it could not have produced the evidence for the magistrate's consideration." *Id.* Jill does not argue that she obtained any new evidence that would necessitate a hearing. Therefore, her contention that the probate court erred when it did not hold a hearing before deciding on her objections fails to comport with relevant authorities.

**{¶22}** Jill acknowledges that the person asserting error "'bears the burden to

demonstrate error by reference to matters made part of the record.'" *Hays v. Young ex rel. Young*, 2024-Ohio-3149, ¶ 30 (11th Dist.), quoting *Hartt v. Munobe*, 67 Ohio St.3d 3, 7 (1993). Without "something contradictory in the record, [appellate courts] will presume the trial court complied with its duty." *Id.*, citing *Singer Steel Co. v. H & J Tool & Die Co., Inc.*, 2004-Ohio-5007, ¶ 18 (11th Dist.). Besides her bare assertions that have no basis in relevant authority, Jill provided us with nothing showing that the probate court failed to comply with its duty in reviewing the magistrate's decision.

**{¶23}** Accordingly, we overrule her first assignment of error.

IV.

**{¶24}** Jill's second and third assignments of error essentially present the same argument that the probate court erred in assessing her $36,089.59, including $11,000 in attorney's fees for the guardianship action. We review a trial court's grant of summary judgment de novo. *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 2020-Ohio-2973, ¶ 8, citing *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2013-Ohio-4544, ¶ 9. Granting "summary judgment is appropriate when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Id.*, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶25}** In her decision (later adopted by the probate court), the magistrate held that Jill failed to provide an adequate accounting of her mother's funds, which she ordered Jill to do several months earlier after holding appellees' motion on their counterclaims in abeyance. Jill does not challenge this holding. She does not assert

10

that the financial documents that she provided created a genuine dispute as to any material fact regarding whether she breached her fiduciary duties, nor does she dispute the finding that her documentation merely shows withdrawals and transactions completed on the account. *See* R.C. 1337.34(B)(4) (an individual that has accepted an appointment as someone's power of attorney must "[k]eep a record of all receipts, disbursements, and transactions made on behalf of the principal"). Furthermore, she does not direct us to anywhere in the record that would refute these findings or point to any aspects of the financial documents that would support her arguments.

**{¶26}** While courts should be wary of granting motions for summary judgment, courts should not hesitate to do so "when the nonmoving party does not 'produce evidence on any issue for which that party bears the burden of production.'" *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269 (1993). Without more guidance to applicable portions of the record, we cannot say that the documents tendered by Jill (that she fails to discuss in any detail in her brief) created a genuine dispute of material facts as to whether she breached her fiduciary duties or stole from her mother. Accordingly, we have no basis to find the probate court erred in holding that Jill was accountable for the specified sum.

**{¶27}** Therefore, we overrule Jill's second and third assignments of error.

V.

**{¶28}** In her fourth assignment of error, Jill seems to argue that the probate court erred in requesting an accounting that dated back to October 2020, because she believed that she was validly operating under the 2013 POA, which was not revoked until 2021. Admittedly, there is some intuitive appeal to this argument.

**{¶29}** But again, Jill fails to cite to the record or any relevant authorities in

support of this point. She did not develop any legal analysis that aids us in deciphering her argument. She cites several cases that touch on the issue of retroactivity, but, as she even admits, those cases are not applicable to the issue before us now, as they dealt with the retroactive application of local rules. App.R. 16(A)(7) clearly requires that parties must cite to authorities, statutes, and parts of the record that support the contentions they bring before the court, which Jill wholly failed to do. Again, it is not the duty of this court to dig through the record and gather relevant authorities in order to assemble a party's argument for him or her. *See Olthaus*, 2023-Ohio-4710, at ¶ 11 (1st Dist.); *see also L.F.*, 2023-Ohio-4199, at ¶ 12 (1st Dist.).

**{¶30}** As we understand the proceedings, the trial court awarded damages going back to 2020. Therefore, it is possible that there was a period of time between 2020 and 2021 that Jill's argument would carry some force. But here is where the lack of record citations and evidence comes into play. We don't know, based on the briefs, whether the amount of money at issue during this interlude was $1 or $35,000. Nor does the record substantiate that Jill actually spent whatever amount of money is involved for her mother's benefit (the crux of the probate court's ruling). For example, even though Jill claims that all spending from her mother's funds was for a proper purpose, Jean actually owed Astoria over $4,000 as of November 2021 after Jill requested that Jean's monthly pension payments cease to go to Astoria. So, the record undermines Jill's claim that she was only spending for her mother's benefit, exactly as the trial court recognized.

**{¶31}** Without evidence on these two critical points, we simply have nothing to evaluate. Therefore, we overrule Jill's fourth assignment of error.

VI.

**{¶32}** For the foregoing reasons, we overrule Jill's four assignments of error

12

and affirm the judgment of the probate court on all grounds.

Judgment affirmed.

**BOCK, P.J.,** concurs.
**ZAYAS, J.,** concurs separately**.**

**ZAYAS, J.,** concurring separately**.**

**{¶33}** I concur with the majority's ultimate decision to overrule the assignments of error and affirm the judgment of the probate court. I write separately to provide my own analysis in reaching this conclusion.

**{¶34}** "A power of attorney is a written instrument authorizing an agent to perform specific acts on behalf of his principal." *Hutchings v. Hutchings*, 2019-Ohio-5362, ¶ 26 (6th Dist.). Pursuant to R.C. 1337.34, the agent must—among other things—"[k]eep a record of all receipts, disbursements, and transactions made on behalf of the principal."

**{¶35}** In granting summary judgment in favor of the appellees in this case, the probate court first granted the appellees' counterclaim for an accounting—in an order granting partial summary judgment in favor of the appellees on certain counterclaims—and ordered Jill to provide an accounting of "all financial transactions she made on behalf of her mother pursuant to the 2013 Springing Power of Attorney from October 2020 to present." According to facts stated in the court's entry, October 2020 corresponds with the date that Jean was admitted to Astoria Place, a nursing home.

**{¶36}** In response to the order, Jill ultimately provided an "accounting" that was 180 pages in total and purportedly showed the money going in and out of three separate bank accounts, each in Jean's name. The "accounting" included a self-created list of the deposits, disbursements, and transactions for each account, as well as bank

statements for each account. Of note, the disbursements from the accounts include a number of cash withdrawals by Jill, ranging from $20 to over $1,000. Further, the transactions within the accounts include repeat charges made at places such as Dominos, Kroger, Shell, Meijer, White Castle, "Lees Famous," Wal-Mart, Dollar Tree, Target, Popeyes, and other similar places. As mentioned above, these repeated transactions and withdrawals occurred after Jean's admission to the nursing home.

{¶37} Upon review of the accounting, the magistrate found that Jill failed to provide any evidence, beyond her own self-serving statements, to substantiate her claim that the cash withdrawals and charges for fast food, gas, groceries, and personal items were made for Jean's benefit. Accordingly, the magistrate found that Jill failed to properly exercise her authority under the power of attorney and entered judgment accordingly.

{¶38} Jill filed objections to the magistrate's decision, arguing that the probate court should find that (1) based on the evidence presented in the guardianship case, Jill spent $11,000 of Jean's money for attorney fees in the guardianship case out of loyalty to her mother, and conveyed "at least" $5,000 of Jean's money to a friend for safekeeping, and (2) Jill should only be held accountable for expenditures that occurred after April 8, 2022, the date that the guardianship case became final and she received a "clear indication" that the power of attorney was revoked.

{¶39} The probate court ultimately overruled the objections and entered a judgment consistent with the magistrate's decision. Jill now appeals, raising four assignments of error.

{¶40} As to the first assignment of error, in which Jill challenges whether the trial court conducted an independent review as to the objected matters, I concur in the majority's analysis under part III of the opinion. I write further only to add that

14

"factual findings" are inappropriate at the summary-judgment stage because summary judgment is only appropriate where "there is no genuine issue of material fact." *See* Civ.R. 56(C). In other words, "[t]he purpose of summary judgment 'is not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Environmental Solutions & Innovations, Inc. v. Edge Eng. & Science, LLC*, 2023-Ohio-2605, ¶ 8 (1st Dist.), quoting *Walker v. Hodge*, 2008-Ohio-6828, ¶ 19 (1st Dist.). Thus, "[t]he trial court is prohibited from weighing the evidence or choosing among reasonable inferences at the summary-judgment stage." *Id.*, citing *Appellant v. Alpha Phi Alpha Homes, Inc.*, 2019-Ohio-960, ¶ 9 (9th Dist.).

**{¶41}** As to the remaining assignments of error, I concur in the majority's decision to overrule the assignments of error on the basis that Jill failed to demonstrate any error in the probate court's judgment. I write separately only to further elaborate on the limited arguments that she raised and to further explain why her lack of citation to the record was ultimately detrimental to her appeal.

**{¶42}** Jill's overriding argument in her second and third assignments of error as to why the trial court erred in its determination of summary judgment is that she was relying on the authority and directives set forth in the 2013 Springing Power of Attorney when she engaged in the transactions that she did prior to its revocation. However, as pointed out by the majority, she does not expand upon this argument in any way or form any argument as to why any or all of the transactions were properly made under the authority of the power of attorney. Rather, in essence, she appears to assert that her bare assertion that she made such transactions with the belief that they were proper under the power of attorney is sufficient to withstand any scrutiny of these transactions. In other words, she argues that, where there is no evidence put forth of wrongful conduct, a bare assertion that the transactions in question were properly

15

made under the authority granted to her under the power of attorney is sufficient to show that the transactions were "facially valid." This ties into her argument under the fourth assignment of error regarding the trial court's requirement to provide an accounting dating back to October 2020, as she—in essence—argues that such a requirement was improper where there was no challenge to the transactions made from October 2020 to August 2023, prior to the revocation of the power of attorney. Thus, her overarching argument on appeal goes to the burden of production and suggests that there is a presumption in her favor that the transactions allegedly made under the authority of the power of attorney were proper in the absence of any evidence to the contrary.

**{¶43}** First, I note that, as mentioned above, Jill only raised limited arguments in her objections to the magistrate's decision, and this overarching argument regarding the burden of production was not one of them. Consequently, she waived this argument for purposes of appeal. *See* Civ.R. 53(D)(3)(b)(iv). Nevertheless, given that this broad argument does overlap with some of the transactions at issue in her objections, I will continue on to address the limited arguments that she raised.

**{¶44}** In support of her argument, Jill first points to *Gupta v. Lincoln Natl. Life Ins. Co.*, 2005-Ohio-6473 (10th Dist.).

**{¶45}** In *Gupta*, wife executed a general power of attorney authorizing husband to act on her behalf. *Gupta* at ¶ 2. Over 14 years later, wife filed a complaint for separation from husband. *Id.* at ¶ 4. That same day, a life insurance company ("the company") received a request to withdraw $50,000 in funds from a retirement account belonging to wife. *Id.* In response, the company sent a loan application. *Id.* Husband completed the loan application, returned the application to the company, and informed the company that he had a power of attorney authorizing him to do so.

16

*Id.* at ¶ 5. He sent the company a copy of the power of attorney. *Id.* The company then processed the loan application and tendered a check made payable to wife to the address listed on the loan application. *Id.* The following month, wife learned of the withdrawal of funds and requested that the company restore the funds to her account as she did not authorize the transaction. *Id.* at ¶ 6. The company refused and sought repayment from the wife. *Id.*

**{¶46}** Wife filed a declaratory-judgment action, seeking a declaration of the rights and duties of the parties as to the funds released by the company. *Id.* at ¶ 7. The company filed a motion for summary judgment, asserting that it was justified in processing the loan application because it did so in reliance on a valid and enforceable power of attorney executed by wife. *Id.* at ¶ 8. The trial court granted summary judgment in the company's favor. *Id.* Wife appealed, arguing that it was error for the trial court to grant summary judgment in the company's favor and "thereby permit the use of the power of attorney by a 'self-dealing attorney-in-fact in an unauthorized loan transaction to create an obligation to a lender without ratification by the principal.'" *Id.* at ¶ 15. The court of appeals disagreed, holding that the company could not be held liable for husband's actions, even though he acted without wife's authorization. *Id.* at ¶ 17-18. The court held as such because, "[w]hile the law sets forth that the conduct of a holder of the power of attorney who engages in self-dealing transactions without authority or ratification of the principal is actionable, the law does not set forth that the conduct *of a third-party* is actionable when the conduct was undertaken upon reliance of a valid power of attorney." (Emphasis in original.) (Citations omitted.) *Id.* at ¶ 16.

**{¶47}** Jill argues that *Gupta* is applicable here because she acted in reliance on a valid power of attorney when undertaking the actions in question. However, this

argument fails as *Gupta* only stands for the proposition that a *third-party* cannot be held liable when they act in reliance on a valid power of attorney. *See Gupta*, 2005-Ohio-6473, at ¶ 16 (10th Dist.). Jill was not a third party to the transactions at issue. Rather, she was the holder of the power of attorney, and *Gupta* directly holds that the conduct of the holder of the power of attorney is actionable when the holder engages in self-dealing transactions that were not authorized or ratified by the principal. *See id.* Jill does not set forth any argument that she engaged in self-dealing transactions that were authorized or ratified by Jean. Therefore, *Gupta* fails to provide any support for Jill's position on appeal.

**{¶48}** Jill further points to *Hutchings*, 2019-Ohio-5362 (6th Dist.), in support of her argument.

**{¶49}** *Hutchings* concerns a dispute between two brothers, John and Chip, over the distribution of trust assets placed in an irrevocable trust by their father. *Hutchings* at ¶ 2. Father and mother passed away shortly after the creation of the trust. *Id.* During their life, John managed their finances. *Id.* at ¶ 3. Chip did not dispute this arrangement, and "even approved of John's efforts on their parents' behalf." *Id.* The parents executed a durable power of attorney, granting John broad authority over their affairs. *Id.* at ¶ 4. The power of attorney "granted John the authority to act in each parent's name and on their behalf in matters including real property transactions, banking, retirements transactions, fiduciary transactions, and estate, trust, and other beneficiary transactions." *Id.* More specifically, the power of attorney "provided John with authority with respect to amending or creating trusts, permitting John to 'create a new revocable or irrevocable inter vivos trust, under whatever terms my attorney-in-fact deems advisable.'" *Id.* at ¶ 5. It also "expressly permitted self-dealing," providing that John could enter into transactions in which he

was personally interested, notwithstanding any law to the contrary. *Id.* Chip never challenged the power of attorney, or the broad authority granted to John. *Id.* at ¶ 6. Rather, Chip "argued that John exceeded his broad authority by having a gift-balancing clause included in the otherwise proper irrevocable trust." *Id.*

{¶50} Johns' authority to execute the gift-balancing clause ultimately reached the court of appeals. *Id.* at ¶ 21-25. There was no dispute that John had the power to execute an irrevocable trust. *Id.* at ¶ 27. Rather, "[t]o challenge only the gift-balancing clause, Chip maintained that John wrongfully exceeded the powers granted, ignoring the comprehensive scope of authority actually given to John." *Id.* The court first held that no presumption of invalidity arose based on self-dealing as such a presumption only arises where there is no express authority to self-deal. *Id.* at ¶ 28. Beyond that, the court went on to hold that, "[b]ecause John had the express authority to execute the irrevocable trust, including the terms he deemed appropriate, and no evidence demonstrated wrongful conduct in execution of the irrevocable trust, John's exercise of authority was facially valid." *Id.* at ¶ 29.

{¶51} Jill argues that *Hutchings* is applicable here because the 2013 Springing Power of Attorney authorized her to make payments on Jean's behalf and there was no evidence of wrongful conduct for the payments made under the power of attorney. Therefore, she argues that such payments were "facially valid." However, Jill fails to elaborate beyond this general conclusory assertion, and the accounting offered in this case is 180 pages long and contains a voluminous number of transactions that occurred over several years. Jill does not point to any specific transaction or expand upon her argument in any way for any specific transaction. In fact, she fails to cite to the record at all and does not even point us to where the power of attorney in question is contained within the record. Instead, she simply makes a conclusory argument that

the entire $36,089.59 award should be reversed based on her bare assertion that all the transactions were properly made under the authority granted to her in the power of attorney.

**{¶52}** I find this argument unpersuasive, particularly given the nature of the transactions in question and the circumstances in which they were made. While I can envision a situation in which an attorney-in-fact could purchase fast food or groceries on behalf of the principal who is admitted to a nursing home, the voluminous number of such transactions in this case is concerning, particularly where the record shows that, in the previous guardianship proceeding, the probate court found that Jill had failed to act "responsibly in meeting [Jean]'s needs," made expenditures from Jean's bank accounts "for the purchase of things not related to the needs of Jean," and put Jean in jeopardy of eviction from the nursing home. Notably, Jill does not argue that the power of attorney permitted her to engage in self-dealing transactions. Rather, she has only maintained on appeal that she was permitted to engage in transactions for Jean's benefit and that all the transactions were engaged in under this authority. However, a general review of the accounting provided causes doubt as to this assertion and, without a fully-developed argument—as required under App.R. 16(A)(7)—to alleviate these concerns, I must concur in the majority's decision to overrule the remaining assignments of error based on Jill's failure to demonstrate error in the probate court's decision.

**{¶53}** It is the appellant's burden to demonstrate error on appeal by reference to the record, and this court should not relieve an appellant of this burden by crafting an argument for her. *See, e.g., In re J.G.S.*, 2019-Ohio-802, ¶ 31 (1st Dist.); *In re Guardianship of Williams*, 2022-Ohio-617, ¶ 43 (8th Dist.). It is for this reason that I must ultimately concur with the majority's decision.

Please note:

The court has recorded its entry on the date of the release of this opinion.