[Cite as *In re Estate of Joseph*, 2025-Ohio-858.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


IN RE: ESTATE OF ALICE M JOSEPH    :       APPEAL NO.   C-240150

                                               TRIAL NO.    2022001512

                                               :

                                               :          *O P I N I O N*


Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 14, 2025


*Bill Baker,* pro se.

**Bock, Judge.**

**{¶1}** In this appeal, appellant Bill Baker challenges the probate court's decision to deny his motion to admit a lost will to probate. But Bill did not file a hearing transcript, preventing us from reaching the merits of his argument. Consequently, we overrule his assignment of error and affirm the probate court's judgment.

## I. Factual and Procedural History

**{¶2}** Alice M. Joseph passed away in February 2022, leaving behind four sons, Bill, Bobby, Tony, and Jerry Baker, and three grandchildren who survived Ms. Joseph's fifth child.

**{¶3}** In April 2022, Bill filed a pro se application to relieve the estate from administration. Bill indicated that Ms. Joseph had died without a will and with less than $35,000 in assets. On a separate form, he identified $5,400 held in a Fifth Third Bank account. The probate court appointed Bill commissioner of the estate, and he distributed half of that $5,400 to himself and the other half to his brother Bobby.

**{¶4}** Shortly thereafter, Bill, now represented by counsel, filed a second application for authority to administer the estate, which consisted of real property worth $155,000. Only this time, Bill omitted Jerry from the list of Ms. Joseph's surviving children. Bill, Bobby, and Tony signed the waiver-of-notice form. The probate court appointed Bill administrator. That same day, Bill filed an inventory of assets, identifying real property worth $94,510. Bill also filed a "waiver of notice of hearing on inventory" form that bore Bobby's and Tony's signatures, but not Jerry's.

**{¶5}** The next month, Bobby and Jerry filed separate requests for a status conference. Both Bobby and Jerry explained that they "did not know about [the] Probate case for mother Alice Joseph, case 2022001512." They also alleged that they "did not sign any documents or any waivers." Jerry added that he was "excluded from

the amended next of kin form."

{¶6} Following a status conference, Bill supplemented the next-of-kin form and identified the seven heirs to the estate. In December 2022, the magistrate issued an order of judgment against Bill and Bobby, explaining that Bill incorrectly divided the $5,041.95 account between only Bill and Bobby. That account should have been divided between all seven heirs, with each child of Ms. Joseph receiving one-fifth of the account, and each grandchild receiving one-fifteenth of the account.

{¶7} In January 2024, Bill applied to probate a "lost, spoliated or destroyed will." Bill claimed that in December 2021, Ms. Joseph signed a will that was attested and subscribed by Bill, Alicia, and Trudy Baker, and witnessed by Philip Rigsby. Bill explained that "Brother got will Bob and Jerry out of house [sic]." According to the "lost will," Ms. Joseph bestowed the interest in her real property "under the attached Schedule-Beneficiary Designations." Yet, there was no "Schedule-Beneficiary Designations" document attached to the "lost will."

{¶8} Following a hearing, the probate court denied Bill's request to admit the "lost will." The probate court found that Bill had failed to satisfy his burden, citing "improprieties in the estate administration," irregularities on the lost will including "the disparate appearance of the signature page," "the differences between the signatures of [Ms. Joseph]" on the lost will and the beneficiary schedule produced by Bill at the hearing, and the credibility of the witnesses.

{¶9} The probate court noted that the copy of the purported will "has several irregularities on its face," including the lack of any referenced schedules and the fact that "the signatures of the decedent and the witnesses appear on a page with no other provisions on it and the typewritten font on the signature page appears to be different than that in the rest of the document." The probate court cited Jerry's testimony that

the will included incorrect birth dates of two of Ms. Joseph's children.

**{¶10}** According to the probate court, Bill "produced a second document . . . Exhibit B . . . which was also allegedly prepared and signed on the same day as the alleged last will." That second document states that Ms. Joseph made Bill the "beneficiary of all my belongings . . . and my house and property." The probate court pointed out that Ms. Joseph's signature on Exhibit B is "markedly different" from her signature on the purported will, and the signatures of Gertrude and Alicia Baker "also appear to be different." And "Jerry Baker testified that the signature on Exhibit B did not appear to be decedent's signature."

## II.    Analysis

**{¶11}** On appeal, Bill challenges the probate court's decision to deny the admission of the "lost will" in one assignment of error. Bill maintains that his mother intentionally chose him to continue living in her house, where he has lived for 34 years, and which holds sentimental value for him. He explains that his mother severed her relationship with Jerry before she passed.

**{¶12}** As an initial matter, Bill failed to file a transcript of the hearing or marshal a legal argument in support of his request to reverse the probate court's decision. As the appealing party, Bill "bears the burden to provide legal and factual support for arguments that []he brings before this court, as prescribed by the Ohio Rules of Appellate Procedure and our local appellate rules." *See Guthrie v. Guthrie*, 2024-Ohio-5581, ¶ 12 (1st Dist.), citing App.R. 16(A)(7) and Loc.R. 16.1(A)(3)(c)-(4). We have repeatedly cautioned appellants that it is their responsibility "to explain to us, with citations to authority and the record, how the trial court erred." *Olthaus v. Niesen*, 2023-Ohio-4710, ¶ 9 (1st Dist.). A party's "'failure to develop an authority-based argument provides sufficient grounds to' reject h[er] appeal and to affirm the

judgment of the trial court." *Niesen* at ¶ 11, quoting *Ohiotelnet.com, Inc. v. Windstream Ohio, Inc.,* 2013-Ohio-4721, ¶ 16-17.

**{¶13}** In support of his argument, Bill cites R.C. 5808.11. But R.C. 5808.11 provides, "A trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." The statute is inapplicable to this case.

**{¶14}** Rather, admitting a lost will to probate is governed by R.C. 2107.26. A probate court "shall admit" a lost will to probate if (1) the proponent of the lost will establishes, by clear and convincing evidence, the contents of the will and that the lost "will was executed with the formalities required at the time of execution," and (2) no opposing party "establishes by a preponderance of the evidence that the testator had revoked the will." R.C. 2107.26(A) and (B). A hearing to admit a lost will "'is no idle ceremony, no matter of mere form, no *ex parte* proceeding; but on the contrary, it is a proceeding on full notice, affording ample opportunity for contest.'" *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986), quoting *Banning v. Banning*, 12 Ohio St. 437, 448 (1861).

**{¶15}** The probate court found that Bill failed to produce clear and convincing evidence of the will's execution and contents. Evidence is clear and convincing if it produces "a firm belief or conviction as to the allegations sought to be established." *Id.* at 104. We review the probate court's decision to deny admission of a "lost will" under a manifest-weight standard. *See In re Estate of Brown*, 2001 Ohio App. LEXIS 1797, *7 (2d Dist. Apr. 20, 2001); *see also Estate of Hand,* 2016-Ohio-7437, ¶ 23 (12th Dist.). When considering the manifest weight of the evidence, we "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and

a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14.

**{¶16}** The probate court cited "irregularities" in the purported lost will and testimony describing the purported lost will's factual errors. Relevant here, it considered "the credibility of the witnesses" as one reason to deny Bill's motion.

**{¶17}** But without a transcript, we have no way of assessing the witnesses' credibility. As the appealing party, it was Bill's "duty to provide a transcript for appellate review." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980); *see* App.R. 9(B)(3). Where, as here, a transcript is necessary to resolve an assignment of error, there is "nothing to pass upon and thus, as to th[e] assigned error[], the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Id.* at 199. While Bill relies on facts surrounding the execution of the lost will, we "cannot speculate what the testimony was at trial." *See Barnett v. Combs*, 2011-Ohio-5947, ¶ 29 (2d Dist.).

**{¶18}** Because Bill failed to file a transcript of the hearing, he cannot prevail on his assignment of error, and we must overrule it.

### *III.  Conclusion*

**{¶19}** We overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.